IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| EMERSON M.F. JOU, M.D., | CIV. NO. 15-00155 JMS-KJM |
| Plaintiff, | ORDER GRANTING DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS, DOC. NO. 41, WITH LEAVE TO AMEND COUNT THREE |
| vs. | |
| GREGORY M. ADALIAN, | |
| Defendant. | |

## ORDER GRANTING DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS, DOC. NO. 41, WITH LEAVE TO AMEND COUNT THREE

### I. INTRODUCTION

This long-running, procedurally-complex dispute concerns two separate suits between Plaintiff Emerson Jou ("Plaintiff" or "Jou") and Defendant Gregory Adalian ("Defendant" or "Adalian"). The court refers to the prior suit, *Jou v. Adalian*, Civ. No. 09-00226 JMS-KJM (D. Haw.) (Judgment entered Dec. 23, 2010) as "*Jou I*," and the present suit, *Jou v. Adalian*, Civ. No. 15-00155 JMS-KJM (D. Haw.) (Filed April 29, 2015) as "*Jou II*."

Adalian moves under Federal Rule of Civil Procedure 12(c) for judgment on the pleadings on all claims in Jou's amended complaint filed on

November 13, 2015. *Jou II*, Doc. No. 41.[1]  Adalian primarily argues that this suit

(*Jou II*) is barred by doctrines of prior adjudication (*i.e.*, res judicata/collateral

estoppel), given extensive pre- and post-judgment proceedings in *Jou I*.  On the

other hand, Jou contends that this suit was properly brought as an independent

action for damages based on a fraudulently-induced settlement agreement in *Jou I*.[2]

Based on the following, the Motion is GRANTED.  Jou, however, may file a

Second Amended Complaint as to Count Three.

## II. <u>BACKGROUND</u>

Although this suit was filed on April 29, 2015, this protracted dispute

between Jou and Adalian dates back to at least May 19, 2009, when *Jou I* was

filed.  The court reviewed and analyzed much of the relevant history of *Jou I* in its

February 5, 2015 "Order (1) Denying Plaintiff's Motion for an Order for Arrest

and Incarceration of [Adalian] . . . and (2) Vacating Orders of May 2, 2014 . . . and

June 5, 2014" ("February 5, 2015 Order").  *Jou I*, Doc. No. 161; *Jou II*, Doc. No.

41-4 (published at *Jou v. Adalian*, 2015 WL 477268 (D. Haw. Feb. 5, 2015)).  And

because it asserts a res judicata/collateral estoppel defense, Adalian's Motion

requires the court once again to examine the details of *Jou I* carefully.  The court

---

[1] "*Jou II*, Doc. No." refers to the docket entry in the court's CM/ECF electronic docket in *Jou II*.  Similarly, where appropriate, the court will refer to electronic docket entries in *Jou I* as "*Jou I*, Doc. No."

[2] In both *Jou I* and *Jou II*, federal jurisdiction is based on 28 U.S.C. § 1332, diversity of citizenship.

thus draws upon its February 5, 2015 Order to begin explaining the background for this Motion, and provides additional relevant details as necessary to analyze whether this suit is barred by principles of prior adjudication.

### A.   Proceedings Leading to a December 23, 2010 Order and Judgment in *Jou I*

Jou filed his initial complaint in *Jou I* on May 19, 2009, seeking payment of promissory notes (the "Notes") issued by Adalian in 1991 and 1992, asserting three claims regarding the Notes.  *See Jou I*, Doc. No. 1.  As detailed in the First Amended Complaint in *Jou I*, the Notes were related to a 1989 "SCV Limited Partnership," with Adalian as general partner, and Jou as one of several limited partners.  *Jou I*, Doc. Nos. 52, 52-4.  The First Amended Complaint re-asserted the three claims related to payment of the Notes, and added five claims related to the SCV Limited Partnership.  *Jou I*, Doc. No. 52.

On June 28, 2010, the parties placed a settlement of *Jou I* on the record before U.S. Magistrate Judge Kevin S.C. Chang.  *Jou I*, Doc. No. 63.  The case, however, remained open -- a dismissal from the parties was due on September 30, 2010.  *Id.*  Specifically, in a July 6, 2010 written settlement agreement ("Settlement Agreement"), Adalian agreed to pay Jou $180,000, with an initial payment of $25,000, and a second payment of $155,000 due no later than September 30, 2010.  *Jou I*, Doc. No. 69-3 at 2; *Jou II*, Doc. No. 55-2 at 2.  The

3

Settlement Agreement concerned only the Notes; it did not release claims or

defenses regarding the SCV Limited Partnership.  *Jou II*, Doc. No. 55-2 at 4.[3]  To

that end, the Settlement Agreement required Jou to file a second amended

complaint that asserted only the three claims related to the Notes.  *Id.* at 2.

---

[3] In particular, the release in paragraph four of the Settlement Agreement provides in part:

> Dr. Jou . . . hereby releases and forever discharges Mr. Adalian, and all of his present and former affiliates . . . with the exception of A. Joel Criz or A. Joel Criz & Associates Inc., from any and all actual or potential claims . . . of any nature whatsoever, whether based on contract, tort, statute, regulations, or other legal or equitable theory of recovery, known or unknown, concealed or unconcealed, suspected or unsuspected, past, present, or future, which Dr. Jou has had, or claims to have or could have had against Mr. Adalian with regard to the Notes, including but not limited to those claims brought in or that could have been brought in the Lawsuit.

*Jou II*, Doc. No. 55-2 ¶ 4.  And paragraph five reserves claims regarding the SCV Limited Partnership as follows:

> The parties agree that this Agreement is limited to the claims in the Subject Lawsuit [*Jou I*] regarding the Notes, and Dr. Jou and Mr. Adalian do not release claims, causes of action or defenses arising out of $282,000.00 invested by Dr. Jou in the Partnership.  Dr. Jou and Mr. Adalian agree that . . . the Parties reserve, and do not release or waive any claims, causes of action, or defenses arising out of the Partnership or its affairs.
>     In further consideration for the foregoing, and for the payments as scheduled in Paragraph No. 3, above, Dr. Jou agrees to cap any damages from claims or causes of action he may raise in the future as a result of his investment in the Partnership or the reserved claims or causes of action as follows:  the amount Dr. Jou invested $282,000.00, plus a 20% rate of return; and $25,000 for general damages.

*Id.* ¶ 5.

Accordingly, on September 24, 2010, Jou filed by stipulation a second amended complaint that was identical to the initial complaint. *Jou I*, Doc. No. 66.

As discussed in the February 5, 2015 Order, the Settlement Agreement did not involve any injunctive or declaratory relief -- it only concerned payment of money. Regarding "jurisdiction and enforcement," the Settlement Agreement provided "[t]his Agreement shall be governed by the laws of the State of Hawaii. In the event that enforcement of any term of this Agreement is necessary, the prevailing party is entitled to recover all costs, interest, and legal fees incurred in such enforcement procedure." *Jou II*, Doc. No. 55-2 at 6.

Adalian paid the first installment of $25,000, but did not pay the remaining $155,000 by September 30, 2010. *Jou I*, Doc. No. 88 at 2. Given Adalian's failure to pay, Jou filed a "Motion to Enforce Settlement Agreement and for Damages, Attorney's Fees, Costs and Judgment" ("Motion to Enforce") on October 6, 2010. *Jou I*, Doc. No. 69. In his Motion to Enforce, Jou argued, among other things, that Adalian had sold real estate in Pennsylvania in June 2010 for $693,900, which he could have used to make the $155,000 payment. *Id.* at 4. The Motion to Enforce argued that the sale "has the earmarks of a fraudulent conveyance to avoid paying Dr. Jou as agreed," and sought "specific enforcement" of the Settlement Agreement as well as "damages for failure to comply with [the] settlement agreement." *Id.* at 6 (citing *TNT Mktg., Inc. v. Aresti*, 796 F.2d 276, 278

(9th Cir. 1986) ("The district court's enforcement power included authority to award damages for failure to comply with the settlement agreement.")).

Similarly, in his November 1, 2010 Reply in support of the Motion to Enforce, Jou emphasized that Adalian had sold the Pennsylvania property before he entered the Settlement Agreement thus "remov[ing] a significant asset from the reach of the judgment." *Jou I*, Doc. No. 76 at 4.  Jou asked that Adalian be held in contempt, and again sought damages for Adalian's breach of the Settlement Agreement. *Id*. at 7-8.  Specifically, Jou claimed that he "suffered a loss of $155,000 as a result of the breach, plus expenses and loss of interest." *Id*. at 8. And he argued -- as he has claimed in this action (*Jou II*) -- that Adalian committed fraud in procuring the Settlement Agreement, which Adalian did not intend to comply with when he signed it:

> Plaintiff gives notice that he specifically reserves fraud, fraudulent conveyance and other claims against Defendant; however, this court has inherent power to sanction Mr. Adalian <u>and</u> impose the equivalent of punitive damages for fraudulent settlement conduct, inter alia, Defendant, at the time he signed the Settlement Agreement, did not intend to pay Dr. Jou.  Instead, Mr. Adalian was buying time, so that he could transfer property out of the reach of any judgment.  Mr. Adalian tacitly admits this transfer.  This was a fraudulent conveyance.

*Id*. at 7-8.  He continued:

6

> In this connection, the Court is empowered to decree specific performance; that is, to order Mr. Adalian to pay the full amount within a short period of time (4 or 5 hours). Dr. Jou also reserves his right to sue independently for fraud and/or specific performance. . . . In the event Dr. Jou is left, as Mr. Adalian proposes, with a judgment, prejudgment interest should be awarded from the date of breach.

*Id.* at 9.

On November 19, 2010, Magistrate Judge Chang issued a Findings and Recommendation to Grant in Part and Deny in Part the Motion to Enforce ("November 19, 2010 F&R"). *Jou I*, Doc. No. 80. Given a binding Settlement Agreement, the November 19, 2010 F&R recommended (1) ordering Adalian to pay the $155,000 balance to Jou within one week from when this court took final action on the November 19, 2010 F&R; (2) entry of final judgment of $155,000 in favor of Jou and against Adalian; (3) denial of Jou's requests for civil contempt, damages and sanctions; and (4) an award of fees and costs reasonably incurred in bringing the Motion to Enforce. *Id.* at 2-3. The November 19, 2010 F&R cautioned Adalian "that his failure to tender the balance of the settlement amount pursuant to a court order may result in a finding of civil contempt as well as other sanctions." *Id.* at 3. In Supplemental Findings, Magistrate Judge Chang recommended an additional award of $6,365.36 in fees and costs, also to be paid

within one week from this court's final action on the November 19, 2010 F&R.

*Jou I*, Doc. No. 81.

Both parties objected, at least in part, to the November 19, 2010 F&R.

Among other arguments, Jou contended that the F&R should be modified "to

authorize execution on the transferred asset [*i.e.*, the Pennsylvania real property]."

*Jou I*, Doc. 86 at 7.  He argued:

> Mr. Adalian actively negotiated an agreement during
> June 2010, promising to pay $180,000.  At the same
> time, Adalian had no intent to pay this amount, and he
> was secretly closing a real estate sale for $693,900.00
> during June of 2010. . . .  In fact, Mr. Adalian acted in
> accordance with his intention not to pay, by admittedly
> paying others from the $693,900, besides Dr. Jou.

*Id.*

And in responding to Adalian's objection, Jou argued that a settlement

could be enforced as he had done, relying on Hawaii caselaw that provides options

for a party's failure to comply with a settlement agreement:

> Defendant argues that a party may not enforce a
> settlement in Hawaii.  Caselaw is otherwise.  *Arakaki v.
> SCD-Olanani Corp*., [110 Haw. 1, 8 n.6, 129 P.3d 504,
> 511 n.6 (2006)], is dispositive:
>
>> Insofar as Arakaki's goal was the
>> Appellant's compliance with the settlement
>> agreement, it could have filed a motion in the
>> circuit court to enforce the settlement or a separate
>> action for breach of contract.  *See* David F. Herr et
>> al., *Motion Practice* § 20.06[A] (4th Ed. Supp.

2005) ("<u>Three</u> available remedies . . . are . . . an
amendment or supplementation of the pleadings to
allege the settlement agreement as an executory
accord[,]. . . a separate action for breach of the
settlement agreement[,and a] motion to <u>enforce
settlement</u>.  <u>The third remedy is the most common
and usually the most cost-effective</u>.").

*Jou I*, Doc. 86 at 5 (quoting *Arakaki*).  That is, Jou understood that he had an

option of filing a separate suit for damages, rather than simply enforcing the

Settlement Agreement, and he recognized he had chosen "the most common and

usually the most cost-effective" remedy.  *Arakaki*, 110 Haw. at 8, n.6, 129 P.3d at

511 n.6; *see also, e.g*., *Rohn Products Int'l v. Sofitel Capital Corp. USA*, 2010 WL

681304, at *3 (D. Md. Feb. 22, 2010) ("Rohn requests a judgment in the amount of

the alleged settlement.  Such relief may be sought in a separate suit based on

standard contract principles or 'it may be accomplished within the context of the

underlying litigation without the need for a new complaint.'") (quoting *Hensley v.

Alcon*, 277 F.3d 535, 540 (4th Cir. 2002)).

On December 23, 2010, this court adopted the November 19, 2010

F&R.  *Jou I*, Doc. No. 88.  This court overruled objections from both sides, and

ordered (consistent with the November 19, 2010 F&R) as follows:

1.      Defendant is ordered to pay $155,000 to Plaintiff
within one week from the date of this Order -- that
is, by December 30, 2010.  Failure to pay this
amount within one week may result in Defendant
being found in contempt of this Order.

9

2.     The court further awards Plaintiff $5,796.00 in attorneys' fees, $273.11 in tax, and $296.25 in costs, for a total of $6,365.36.  Defendant must remit this payment to Plaintiff no later than one week from the date of this Order, by December 30, 2010.  Failure to pay this amount within one week may result in Defendant being found in contempt of this Order.

3.     Plaintiff's request[s] for civil contempt, damages, and sanctions are DENIED.

4.     The court directs the Clerk of Court to enter Judgment in the amount of $155,000 in favor of Plaintiff and against Defendant.  The Second Amended Complaint, filed September 24, 2010, and all claims asserted therein, are dismissed with prejudice.  The court retains jurisdiction to enforce the terms of the July 6, 2010 Settlement Agreement and Release between the parties.

*Id.* at 8-9.  Accordingly, final Judgment was entered on December 23, 2010.  The

December 23, 2010 Judgment provided:

IT IS ORDERED AND ADJUDGED that Judgment is entered in favor of the Plaintiff Emerson M. F. Jou, M.D., in the amount of $155,000.00 and against the Defendant Gregory M. Adalian and all claims asserted in the Second Amended Complaint are dismissed with prejudice, pursuant to the "Order Adopting the November 19, 2010 Findings and Recommendation to Grant in Part and Deny in Part Plaintiffs' Motion to Enforce Settlement Agreement and for Damages, and the November 23, 2010 Supplement to the Findings and Recommendation," filed on December 23, 2010.  It is further ordered that Plaintiff is awarded $5,796.00 in

10

              attorneys' fees, $273.11 in tax, and $296.25 in costs for a
total of $6,365.36.

*Jou I*, Doc. No. 89.

**B.      2011 Post-Judgment Contempt Proceedings Attempting to Collect the
December 23, 2010 Judgment**

              Adalian did not pay the December 23, 2010 Judgment within seven

days.  Jou then attempted to enforce the December 23, 2010 Order and to secure

payment of the Judgment by contempt proceedings.  Specifically, on January 10,

2011, Jou filed a "Motion for Order to Show Cause re: Contempt of Court by

Defendant Gregory M. Adalian and for Attorney's Fees and Costs."  *Jou I*, Doc.

No. 90.  He also filed an Ex Parte Motion for Examination of Judgment Debtor.

*Jou I*, Doc. No. 99.  Jou sought an order holding Adalian in civil contempt, and

fining him until he paid the December 23, 2010 Judgment.  *Jou I*, Doc. No. 90-1 at

1.  Jou also asked the court to command Adalian to produce certain tax returns and

real estate records.  *Id*. at 6.  He argued, in part, that "[Adalian] will refrain from

providing check ledgers, or copies of complete information relating to his

preemptive sale of real estate designed to defeat the settlement agreement he was

negotiating."  *Id*. at 5.

              A February 14, 2011 hearing was set before Magistrate Judge Chang.

On that date, however, Adalian filed a bankruptcy petition in the U.S. Bankruptcy

Court for the Middle District of Pennsylvania ("Bankruptcy Court"), *Jou I*, Doc.

No. 103, and the case was stayed under 11 U.S.C. § 362(a).  *Jou I*, Doc. No. 105.

On April 20, 2011, the Bankruptcy Court dismissed the February 14,

2011 bankruptcy petition, apparently for Adalian's failure to file certain

documents.  *Jou I*, Doc. No. 106-1.  After that dismissal, on May 23, 2011, Jou

renewed his attempt to hold Adalian in contempt for failure to pay the December

23, 2010 Judgment.  *Jou I*, Doc. No. 113.  Specifically, Jou filed a "Motion for an

Order that Defendant Gregory M. Adalian is in Contempt of Court; For Fines and

Other Relief and for Attorneys' Fees and Costs."  *Id.*  He again argued, in part, that

> Defendant Adalian took preemptive steps to make
> compliance [with the Settlement Agreement] more
> difficult. . . .  Transferring some of his assets out of the
> reach of the settlement he was currently negotiating was
> preemptive. . . .  On June 7, 2010[,] Mr. Adalian and his
> wife sold property to a family corporation for $693,900.
> Defendant Adalian, on information and belief gave his
> wife a significant amount of the proceeds[.]  Mr. Adalian
> did not tell the Court or Plaintiff.  Instead, he represented
> that during June 2010 that he would pay the full amount
> of settlement.

*Jou I*, Doc. 113-1, at 4-5.  Among other relief, he sought payment of "[t]he actual

loss of $161,365.36 ($155,000 + $6,365.36), as ordered on 12-23-10 . . . as a

sanction payable to Dr. Jou in addition to fees and costs incurred in this

proceeding."  *Id.* at 13-14.

A hearing was scheduled before Magistrate Judge Chang for July 15, 2011.  Adalian responded on July 14, 2011 by filing another bankruptcy petition in the Middle District of Pennsylvania, *Jou I*, Doc. No. 120-2, and the hearing was continued until August 29, 2011.  *Jou I*, Doc. No. 119.  Adalian did not appear at the August 29, 2011 hearing.  On August 30, 2011 Magistrate Judge Chang issued a Findings and Recommendation, *Jou I*, Doc. No. 122, recommending granting in part Jou's motion seeking contempt (Jou argued, among other contentions, that a bankruptcy stay was no longer in effect and did not bar the contempt proceedings, *Jou I*, Doc. No. 120 at 3).

Meanwhile, however, Adalian filed a *third* bankruptcy petition in the Middle District of Pennsylvania on August 26, 2011.  *Jou I*, Doc. No. 124.  After being informed of Adalian's latest bankruptcy filing, Magistrate Judge Chang vacated the August 30, 2011 Findings and Recommendation and denied the pending contempt motion without prejudice.  *Jou I*, Doc. Nos. 126, 127.

Nevertheless (despite the bankruptcy stay), on September 23, 2011, Jou filed another motion seeking to hold Adalian in contempt for failure to pay the Judgment.  *Jou I*, Doc. No. 128.  Among other grounds, he argued that the bankruptcy proceedings were filed in bad faith, although he acknowledged that a proceeding remained pending in the Bankruptcy Court.  *See id.* at 2 ("This motion is made on the further ground that while violating this Court's Order, Mr. Adalian

13

has vexatiously and contumaciously multiplied these proceedings by maliciously filing three bankruptcy petitions.  Two of the three have been dismissed.  The most recent was found by the Bankruptcy Court to be in bad faith.").  Jou again argued that Adalian committed "settlement fraud" by concealing the $693,000 sale of Pennsylvania real property, as evidenced by subsequent bankruptcy actions.  *Jou I*, Doc. No. 128-1 at 2-3.  Jou added allegations that Adalian had "loaned his small company $175,000" out of the $693,000, and had similarly sold other assets (stock Adalian valued at $157,000) for $10,000 to avoid paying the judgment.  *Id.* at 4. And he again contended that Adalian "falsely represented that during June 2010 that he would pay the full amount of settlement," *id.* at 9, arguing that "Defendant Adalian concedes taking the preemptive step to make his compliance [with the Settlement Agreement] difficult, by selling these assets (while representing to this Court he would pay in full)."  *Id.* at 13.

The September 23, 2011 contempt motion sought to imprison Adalian for failure to comply with the court's December 23, 2010 Order and corresponding Judgment, and again sought payment of $161,365.36, plus additional fees and costs, along with "a coercive sanction" of $500 per day and "compensatory contempt fines" of $22,998.47.  *Id.* at 15.  Jou also filed an Ex Parte Motion to Shorten Time to hear the September 23, 2011 contempt motion ("Ex Parte Motion").  *Jou I*, Doc. No. 129.

14

On September 28, 2011, a bankruptcy judge issued a temporary restraining order, restraining Jou and/or his counsel, Stephen Shaw, from "pursuing any monetary collection actions" against Adalian, "including but not limited to" pursuing the pending Ex Parte Motion.  *Jou I*, Doc. Nos. 130-1, 130-3, 131. Accordingly, on September 29, 2011, Magistrate Judge Chang denied the Ex Parte Motion without prejudice.  *Jou I*, Doc. No. 131.  On October 25, 2011, Jou withdrew the contempt motion without prejudice.  *Jou I*, Doc. No. 132.

## C.   Bankruptcy Proceedings from 2011 to 2013

While *Jou I* remained stayed in this court, extensive proceedings occurred in the Bankruptcy Court between 2011 and 2013.  Some of the background is explained in three published decisions of the Bankruptcy Court -- *In re Adalian*, 474 B.R. 150 (Bankr. M.D. Pa. 2012); *In re Adalian*, 481 B.R. 290 (Bankr. M.D. Pa. 2012); and *In re Adalian*, 500 B.R. 402 (Bankr. M.D. Pa. 2013).

On November 5, 2013, the Bankruptcy Court concluded that Adalian was not entitled to discharge the debt at issue in *Jou I*.  500 B.R. at 410.  That is, the Bankruptcy Court entered summary judgment in favor of Jou on his complaint in that court seeking a determination of non-dischargeability of the debt.  *Id.* Given that finding, the Bankruptcy Court granted Jou relief from the automatic stay to allow him to proceed in *Jou I*.  *Id.* at 413.

**D.    Further Contempt Proceedings Attempting to Collect the December 23, 2010 Judgment**

On February 28, 2014, Jou filed a "Renewed Motion for an Order that Defendant Gregory M. Adalian is in Contempt of Court, for Fines and for Other Relief Including Attorneys' Fees and Costs" ("Renewed Motion"). *Jou I*, Doc. No. 134.  He again sought to find Adalian in contempt for violating the court's December 23, 2010 Order and Judgment, and sought a per diem fine as a "coercive measure." *Jou I*, Doc. No. 134-1 at 7.  Once again, Jou argued that Adalian had committed settlement fraud. *Id.* at 2-3.  And he again sought $161,365.36, plus additional fees, costs, fines, and sanctions. *Id.* at 15.  Adalian was no longer represented by counsel, and did not file a formal opposition, although he appeared by telephone at a hearing on the Renewed Motion. *Jou I*, Doc. No. 138.

On April 9, 2014, Magistrate Judge Chang issued a Finding and Recommendation to Grant in Part and Deny in Part the February 28, 2014 Renewed Motion ("April 9, 2014 F&R"). *Jou I*, Doc. No. 139.  The April 9, 2014 F&R:

- Found Adalian in contempt of court, determining by clear and convincing evidence that Adalian violated the December 23, 2010 Order and had failed to demonstrate a present inability to comply with that Order.  (Adalian had failed to appear for judgment debtor examinations, and had not produced any evidence to establish that he was unable to pay amounts due.) *Id.* at 11;

16

- Recommended that Adalian "be ordered to pay the outstanding balance set out in [the December 23, 2010] Order within one week of the order taking action on this Findings and Recommendation." *Id.* at 14;

- Recommended a fine of $200 per calendar day as a coercive sanction until Adalian complies with the Order. *Id.* at 13;

- Recommended an award of attorneys' fees and costs incurred in connection with the motion. *Id.* at 15; and

- Declined to recommend imprisonment. It stated, however, that "if [Adalian] continues to disobey the Order, [Jou] may renew his request for incarceration. It is well within the Court's discretion to recommend imprisonment and the Court will not hesitate to recommend such a sanction, if necessary and appropriate."

*Id.* at 13-14. Adalian did not object to the April 9, 2014 F&R, and this court adopted it in a May 2, 2014 Order. *Jou I*, Doc. No. 141.

On May 16, 2014, Magistrate Judge Chang issued an Order Amending a Supplemental Finding and Recommendation, recommending a further award of $33,549.36 in fees, taxes and costs against Adalian. *Jou I*, Doc. No. 144 at 3. Without objection, this court adopted the May 16, 2014 recommendation in a June 5, 2014 Order. *Jou I*, Doc. No. 145.

Despite the May 2, 2014 and June 5, 2014 Orders, Adalian did not pay the amounts due. Accordingly, on October 9, 2014, Jou filed a "Motion for an Order for Arrest and Incarceration of Contemnor-Defendant Gregory M. Adalian and for Attorneys' Fees and Costs" ("Motion to Arrest"). *Jou I*, Doc. No.

146.   Among other arguments, Jou again raised the allegations of Adalian's

settlement fraud.  *Jou I*, Doc. No. 146-1 at 3-7.  Adalian obtained counsel and,

after unsuccessful attempts by Magistrate Judge Barry M. Kurren to resolve

matters, the Motion to Arrest was set for a January 20, 2015 hearing.

At the hearing on the Motion to Arrest, the court sua sponte raised

the issue -- never addressed previously by either party or this court -- whether the

court could properly use contempt powers in the collection of the December 23,

2010 Judgment.  After considering supplemental briefing, the court issued its

February 5, 2015 Order.  *Jou I*, Doc. No. 161.  The February 5, 2015 Order, as

dictated by binding precedent, concluded that Jou was incorrectly attempting to

use the court's contempt powers to collect the December 23, 2010 money

judgment.  *Id.* at 14-18; *see, e.g.*, *Shuffler v. Heritage Bank*, 720 F.2d 1141, 1147

(9th Cir. 1983) ("The proper means . . . to secure compliance with a money

judgment is to seek a writ of execution, not to obtain a fine of contempt for the

period of non-payment.").  Accordingly, the court denied the request to imprison

Adalian and, although recognizing the inefficiency of its actions, vacated its May

2, 2014 and June 5, 2014 Orders regarding contempt sanctions.  The court,

however, reaffirmed that the December 23, 2010 Judgment of $161,365.36

($155,000 plus fees and costs of $6,365.36) remained unpaid.  *Jou I*, Doc. No. 161

at 23.[4]

## E.    Jou Collects the December 23, 2010 Judgment (Filing *Jou II* in the Meantime)

Given the February 5, 2015 Order, Jou began efforts to collect the

December 23, 2010 Judgment under Federal Rule of Civil Procedure 69(a) by writ

of execution under Hawaii law, rather than by contempt proceedings.  *See Jou I*,

Doc. 162 ("Ex Parte Motion for Examination of Judgment Debtor").  In a

February 12, 2015 Ex Parte Motion for Examination of Judgment Debtor, Jou

alleged much of the same background regarding Adalian's failure to pay the

December 23, 2010 Judgment.  *Jou I*, Doc. No. 162-1.  He described intervening

Bankruptcy Court proceedings (and attached evidence from those proceedings),

arguing that Adalian was committing fraud both before and after he entered into

the Settlement Agreement.  *Id.* at 3-13.  He also sought production of documents

in advance of the debtor examination, specifically arguing (among other

contentions):

> The foregoing illustrates the dire need for a schedule to
> produce documents well ahead of the debtor's exam.
> Other examples abound.  In June of 2010, when Mr.

---

[4]  The court recognized that Jou was also entitled to further post-judgment interest, noting that an issue regarding the rate remained open.  As described below, further proceedings ensued regarding the calculation and amount of post-judgment interest, which resulted in a November 23, 2015 "Order Declaring the Applicable Post-Judgment Interest Rate."  *Jou I*, Doc. No. 195.

> Adalian was "settling" with Dr. Jou in the present case,
> Mr. Adalian sold some of this real estate for $882,000.
> Mr. Adalian testified in bankruptcy that he gave his
> brother $100,000 from the proceeds.  This was rather
> than pay Dr. Jou.

*Id.* at 9; *see also Jou I*, Doc. No. 162-2 ¶ 5 (counsel attesting that "while [Adalian]

was promising to pay Plaintiff the full amount of the settlement ($180,000) during

June of 2010, Mr. Adalian concealed from the Court and from Plaintiff, that he had

previously listed a property for sale.  The property sold for about $882,000 in June

of 2010.").

On April 8, 2015, Adalian paid Jou $50,000 as a partial payment of

the outstanding $161,365.36 Judgment (exclusive of post-judgment interest).  *Jou

I*, Doc. No. 173-3.  Adalian's counsel indicated that Adalian would "make further

payments to Dr. Jou on the remaining balance and interest portions . . . as soon as

he is able to obtain the funds over the next 60 to 120 days."  *Id.*  And on April 29,

2015, Jou filed the present action (*Jou II*) seeking damages for "settlement fraud,"

"constructive fraud," "intentional spoliation of evidence," and "civil conspiracy."

*Jou II*, Doc. No. 1.  (*Jou II* was initially assigned to Judge Helen Gillmor).

After further negotiations, on August 19, 2015, the parties filed a

stipulation (which the court adopted in an August 24, 2015 Order) to resolve *Jou

I.  See Jou I*, Doc. No. 187.  Among other things, the parties agreed that:

- *Jou II* would be reassigned from Judge Gillmor to Judge Seabright.

- In *Jou II*, Jou would waive claims "which may be deemed for attorneys' fees and/or costs initially ordered in the Court's May 2, 2014 Order (Doc. No. 141) and June 5, 2014 Order (Doc. No. 145) in [*Jou I*], but which were thereafter vacated by Judge Seabright in [*Jou I*] its February 5, 2015 Order (Doc. No. 161)."

- Within five days of acceptance of the stipulation by the court, Adalian would pay Jou the remaining balance of the December 23, 2010 Judgment ($113,555.02), which included a disputed amount of post-judgment interest under 28 U.S.C. § 1961 (subject to further proceeding regarding interest).

- Jou would then submit a motion for this court to determine the applicable post-judgment interest rate.  And depending on the court's ruling on post-judgment interest, "the parties [would] attend a conference with the Court regarding the need, if any, for the debtor's examination of Mr. Adalian to go forward and [would] set a date, therefore, if deemed necessary."

*Id*.  Accordingly, Jou submitted a non-hearing "Motion For Determination That The Contractual Interest Rates Apply."  *Jou I*, Doc. No. 189.  Meanwhile, Adalian paid Jou $113,571.80, representing the remaining amount owed (subject to a ruling on the motion regarding interest).  *Jou I*, Doc. No. 192-4.  On November 23, 2015, the court issued an Order declaring that the interest rate set forth in 28 U.S.C. § 1961 applied, and found that Adalian had paid all amounts due.  *Jou I*, Doc. No. 195 at 16.  And because this obviated the need for the debtor's examination, and the court directed the Clerk of Court to close *Jou I*.  *Id.* at 17.

**F.      Relevant Proceedings in *Jou II***

In accordance with the August 24, 2015 stipulation and order, *Jou II* was reassigned from Judge Gillmor to Judge Seabright.  *Jou II*, Doc. No. 9.  On November 13, 2015, Jou filed a First Amended Complaint, adding factual allegations and realleging four Claims or Counts: (1) "Settlement Fraud;" (2) "Constructive Fraud;" (3) "Intentional Spoliation of Evidence;" and (4) "Civil Conspiracy."  *Jou II*, Doc. No. 21.

Count One ("Settlement Fraud") begins by detailing the 1989 SCV Limited Partnership and related transactions.  *Id.* at 2-9.  It describes how those dealings between Jou and Adalian led to *Jou I*, outlines the Settlement Agreement, and explains how Adalian then breached it.  *Id.* at 8-11.  In particular, the First Amended Complaint alleges:

> 25.  With an April 1, 2010 deposition deadline looming, Mr. Adalian began making efforts to settle with Plaintiff. Unknown to the Court, or Dr. Jou, Mr. Adalian was also in the final stages of selling some of his real estate, for $882,000.
>
> 26.  After numerous emails and protracted discussions during May and June of 2010, Defendant repeatedly represented to Plaintiff and the Court that he would pay $180,000 to Dr. Jou to settle the lawsuit.  At the time Defendant Adalian made those representations he had no intention of performing them. . . .
>
> 27.  Defendant further represented to Plaintiff that he would pay Plaintiff $25,000 on or before July 6, 2010

22

and $155,000 no later than September 30, 2010. . . .   At the time Defendant Adalian made those representations he had no intention of performing them.

28.  The foregoing representations were material to the transaction at hand which was to settle Jou-I, and to end the dispute therein between the parties.  Had Plaintiff known the true facts, he never would have concluded the settlement.

29.  The foregoing representations by Mr. Adalian were made falsely and Defendant made them with knowledge of their falsity.  These material representations were made by Defendant for the purpose of inducing Plaintiff to dismiss the lawsuit against Defendant in Jou-I.

30.  When Defendant Gregory Adalain made these representations, as aforesaid, he knew at the time that the representations were made that they were false, in that these representations were made by Defendant to Plaintiff without the present intent to fulfill the matters represented.  Each false representation was reasonably believed by Plaintiff to be true, and he had no reason to doubt their veracity.

31.  Unknown to Plaintiff, during May and June of 2010, when Defendant Gregory M. Adalian made the above representations (without any present intent to fulfill them), he was selling some of his previously listed real estate for $882,000.  Out of the sale, Defendant intended only to pay Plaintiff $25,000, even though Defendant had more than enough coming to pay the total amount.  At the time of his false representations, Mr. Adalian fully intended to shift his assets from the sale around to avoid paying Plaintiff, and to file for bankruptcy.  He knew he was not qualified for bankruptcy and was only buying time to move assets.  Defendant's misrepresentations and concealments, together with activities involving his real estate listing and sale were done to avoid paying the

23

settlement amount to Dr. Jou, and to cover up Defendant's assets and income.  At no time prior to 9/30/10, did Defendant Adalian disclose the $882,000 sale to Plaintiff.  That transaction was discovered during an internet search by Dr. Jou's counsel.

. . . .

33.  Plaintiff justifiably relied on the foregoing misrepresentations and each of them.  Plaintiff had no way to determine Mr. Adalian's secret intention not to pay the balance of the settlement at the time Adalain made representations that he would pay in full.  In justified reliance on Defendant's false representations, Plaintiff dismissed his claims for fraud and for breach of the promissory notes.  In further justified reliance, Plaintiff (1) signed the settlement agreement . . . which restated the false representations by Mr. Adalian, and (2) Plaintiff dismissed claims 1-3 based on the promissory notes.  In further justified reliance on these concealments and false representations, Plaintiff also forewent filing further claims against Mr. Adalian.

. . . .

36.  As a further legal and proximate result of Plaintiff's reliance on Mr. Adalian's fraudulent concealment and misrepresentations, Plaintiff sustained injury, loss, and damages including, but not limited to, (A) expenses to litigate with Defendant Adalian to collect on the judgment, (B) expenses of about $70,000 to pursue Defendant Adalian through his three frivolous bankruptcy proceedings in Pennsylvania, (C) expenses exceeding $50,000 to enforce the judgment in Jou-I, (D) loss of the full amount represented, including 10% interest which currently exceeds $150,000, and (E) a cap on Plaintiff's right to recover in tort against Defendant Adalian in a fraudulent real estate scheme (headed by Adalian as general partner) which was limited by the settlement to $282,000 plus a 20% rate of return and $25,000 for general damages.

*Jou II*, Doc. No. 21 at 9-14.

Count Two ("Constructive Fraud"), after incorporating prior factual allegations, alleges in its entirety:

> 42.  At the time of the acts and omissions hereinabove alleged, Defendant Gregory Adalian was a fiduciary with respect to Plaintiff and other Hawaii residents, in that Mr. Adalian was a general partner and Plaintiff, and others, were limited partners.

*Id.* at 16.

Count Three ("Intentional Spoliation of Evidence"), provides in relevant part:

> 44.  At all times Defendant Adalian knew of a potential lawsuit to be brought by Dr. Jou involving the partnership in California ("SCV Partnership").
>
> 45.  Defendant intentionally destroyed or lost evidence designed to disrupt or defeat this lawsuit.  Just some of the documents needed were demanded on March 19, 2009.  [First Amended Complaint] Ex. A.73 - A.74.
>
> 46.  Defendant's intentional destruction or loss of evidence did, in fact disrupt this lawsuit regarding the SCV Partnership.
>
> 47.  As a direct and proximate cause of Defendant's intentional destruction or loss of evidence, Plaintiff is unable to prove the partnership fraud case, all to Plaintiff's damages in the amount of $282,000, plus a 20% rate of return, and $25,000 for general damages.

*Id.* at 16-17.

And Count Four ("Civil Conspiracy") alleges:

49.  Defendant Gregory M. Adalian, in doing the
foregoing acts and omissions combined with DOEs 1-10
to accomplish a criminal or unlawful common purpose,
or to accomplish some common purpose not itself
criminal or unlawful by criminal or unlawful means.

50.  Each of the acts alleged above were overt acts done
in pursuance of the common purpose.

*Id.* at 17.

On March 29, 2016, Adalian filed the Motion for Judgment on the

Pleadings at issue in this Order.  *Jou II*, Doc. No. 41.  On May 27, 2016, Jou filed

an Opposition, and on June 6, 2015 Adalian filed his Reply.  *Jou II*, Doc. Nos. 55,

56.  The court heard the Motion on June 27, 2016.  *Jou II*, Doc. No. 58.  After the

hearing, the court requested supplemental briefing regarding the Seventh

Amendment, and such briefing was filed by both parties on July 13, 2016.  *Jou II*,

Doc. Nos. 64, 65.

## III.  <u>STANDARD OF REVIEW</u>

A party may make a motion for judgment on the pleadings at any

time after the pleadings are closed, but within such time as to not delay the trial.

Fed. R. Civ. P. 12(c).  Rule 12(c) motions are virtually identical to Rule 12(b)(6)

motions, and the same standard applies to both.  *See Dworkin v. Hustler*

*Magazine, Inc.,* 867 F.2d 1188, 1192 (9th Cir. 1989) (holding that Rule 12(c) and

Rule 12(b)(6) motions differ in time of filing but are otherwise "functionally identical," and applying the same standard of review).

Thus, to survive such motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007)); *see also Weber v. Dep't of Veterans Affairs,* 521 F.3d 1061, 1065 (9th Cir.2008).  This tenet -- that the court must accept as true all of the allegations contained in the complaint -- "is inapplicable to legal conclusions." *Iqbal,* 556 U.S. at 678.  Accordingly, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555); *see also Starr v. Baca,* 652 F.3d 1202, 1216 (9th Cir. 2011) ("[A]llegations in a complaint or counterclaim may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively.").

Rather, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 556 U.S. at 678 (citing *Twombly,* 550 U.S. at 556).  In other words, "the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to

27

require the opposing party to be subjected to the expense of discovery and continued litigation." *Starr,* 652 F.3d at 1216.  Factual allegations that only permit the court to infer "the mere possibility of misconduct" do not show that the pleader is entitled to relief as required by Rule 8.  *Iqbal,* 556 U.S. at 679.

## IV. **DISCUSSION**

Adalian argues that *Jou II's* claims for settlement fraud and constructive fraud (Counts One and Two) duplicate relief Jou already sought in *Jou I's* enforcement proceedings.  *Jou II*, Doc. No. 41 at 9-12.  And, to the extent that Counts Three (spoliation of evidence) and Four (civil conspiracy) otherwise state claims, Jou argues that they could have been brought in *Jou I*.[5]  *Id.* at 18-20. That is, the Motion argues that this action is barred by res judicata -- Adalian argues that "all causes of action arising from the settlement of claims relating to the promissory notes in issue, paid off in full pursuant to the final judgment in *Jou I*, are barred since they were or could have been litigated in that prior action." *Jou II*, Doc. No. 56 at 8.  Futher, Adalian submits that this determination can be made

---

[5] Adalian also argues that Hawaii courts do not recognize distinct torts of "intentional spoliation of evidence" or "civil conspiracy." *Jou II*, Doc. No. 41 at 16, 19.  Because these Counts fail on other grounds, the court need not reach this alternate argument in this Order.

at this Rule 12(c) stage, where no facts are disputed based on the pleadings and court records.[6]

## A.    Hawaii Law Applies

Initially, the court must determine whether to apply federal or Hawaii law in analyzing the preclusive effect, if any, of proceedings in *Jou I*. The general rule is that "federal common law governs the claim-preclusive effect of a dismissal by a federal court sitting in diversity." *Taco Bell Corp. v. TBWA Chiat/Day Inc.*, 552 F.3d 1137, 1144 (9th Cir. 2009) (quoting *Semtek Int'l Inc. v. Lockheed Martin Corp.*, 531 U.S. 497, 508 (2001)). In turn, however, "[f]ederal common law requires application of 'the law that would be applied by state courts in the State in which the federal diversity court sits.'" *Id.* (quoting *Semtek*, 531 U.S. at 508). Applied here, decisions in *Jou I* were rendered by this court, sitting in diversity and applying substantive Hawaii law. Thus, any preclusive effect of *Jou I* is also governed by Hawaii law. *See also Giles v. Gen. Motors Acceptance Corp.*, 494 F.3d 865, 884 (9th Cir. 2007) (applying state preclusion law to

---

[6] *See, e.g.*, *Cowan v. Ernest Codelia, P.C.*, 149 F. Supp. 2d 67, 74 (S.D.N.Y. 2001) ("The fact that the defendants bring this motion under Rule 12(c), however, does not affect the Court's ability to entertain the res judicata defense in this case where the facts of the [prior action] are undisputed."); *Trigueros v. Adams*, 658 F.3d 983, 987 (9th Cir. 2011) (reiterating that courts "may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue") (citation omitted).

determine the effect of a prior federal court decision that was based on substantive

state law while sitting in diversity).[7]

## B.    Hawaii Preclusion Standards

> Under Hawaii law,
>
> [t]he judgment of a court of competent jurisdiction is a
> bar to a new action in any court between the same parties
> or their privies concerning the same subject matter, and
> precludes the relitigation, not only of the issues which
> were actually litigated in the first action, but also of all
> grounds of claim and defense which might have been
> properly litigated in the first action but were not litigated
> or decided.

*Foytik v. Chandler*, 88 Haw. 307, 314, 966 P.2d 619, 626 (1998) (quoting

*Morneau v. Stark Enters., Ltd.*, 56 Haw. 420, 422-23, 539 P.2d 472, 474-75

(1975)).  *See also, e.g.*, *Mather v. First Hawaiian Bank*, 2014 WL 4199335, at *5

(D. Haw. Aug. 22, 2014) ("Under Hawaii law, the doctrine of res judicata applies

when: 1) the claim asserted in the action in question was or could have been

asserted in the prior action, 2) the parties in the present action are identical to, or in

---

[7] Ultimately, it makes little difference whether state or federal law applies -- the result in this case would be the same applying federal res judicata standards, which are consistent with Hawaii law.  *See, e.g.*, *Smallwood v. U.S. Army Corp[s] of Eng'rs*, 2009 WL 196228, at *12 n.3 (D. Haw. Jan. 26, 2009) ("Hawaii's articulation of collateral estoppel and res judicata are similar to the federal standard.") (citations omitted); *see also Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Planning Agency*, 322 F.3d 1064, 1078 (9th Cir. 2003) ("Res judicata bars relitigation of all grounds of recovery that were asserted, or could have been asserted, in a previous action between the parties, where the previous action was resolved on the merits.  It is immaterial whether the claims asserted subsequent to the judgment were actually pursued in the action that led to the judgment; rather, the relevant inquiry is whether they could have been brought.") (quoting *United States ex rel. Barajas v. Northrop Corp.*, 147 F.3d 905, 909 (9th Cir. 1998)).

privity with, the parties in the prior action, and 3) a final judgment on the merits was rendered in the prior action.") (quoting *Pedrina v. Chun*, 97 F.3d 1296, 1301 (9th Cir. 1996)).[8]

       "To determine whether a litigant is asserting the same claim in a second action, the court must look to whether the 'claim' asserted in the second action arises out of the same transaction, or series of connected transactions, as the 'claim' asserted in the first action." *Kauhane v. Acutron Co.*, 71 Haw. 458, 464, 795 P.2d 276, 279 (1990) (citing Restatement (Second) of Judgments § 24 (1982)).

///

///

///

---

[8] The court uses the term "res judicata" under Hawaii law to refer to traditional theories of both res judicata and collateral estoppel. As this court noted in *Bumatay v. Fin. Factors, Ltd.*, 2010 WL 3724231 (D. Haw. Sept. 16, 2010),

> Hawaii law now prefers the modern terms "claim preclusion" and "issue preclusion" instead of "res judicata" and "collateral estoppel." *See Bremer v. Weeks*, 104 Haw. 43, 53, 85 P.3d 150, 160 (2004). Hawaii cases sometimes merge the terms "res judicata" and "collateral estoppel." *See, e.g.*, *Bush v. Watson*, 81 Haw. 474, 480, 918 P.2d 1130, 1136 (1996) ("Collateral estoppel is an aspect of res judicata. . . . [C]ollateral estoppel [is] an included doctrine [of res judicata].") (quoting *Morneau v. Stark Enters., Ltd.*, 56 Haw. 420, 423, 539 P.2d 472, 475 (1975)); *In re Dowsett Trust*, 7 Haw. App. 640, 644, 791 P.2d 398, 401 (1990) ("[R]es judicata comprises two separate doctrines or rules concerning the preclusive effect of prior adjudication. Those doctrines or rules are denominated 'res judicata' and 'collateral estoppel.'").

*Id*. at *4 n.3.

C.   **Application of Standards**

1.   ***Res judicata applies***

The second and third prongs of the applicable analysis are met -- the parties to *Jou I* and *Jou II* are identical, and final judgment was entered in *Jou I*. Rather, resolution turns on the first prong, that is, whether claims in *Jou II* were or could have been made in *Jou I* (or were specifically reserved in *Jou I* from a res judicata bar).

And in this regard, all of the claims brought in *Jou II* "arise[] out of the same transaction, or series of connected transactions," *Kauhane*, 71 Haw. at 464, 795 P.2d at 279, as claimed or asserted in *Jou I*. The core of *Jou II* alleges "settlement fraud" or "fraudulent inducement" in the formation of the Settlement Agreement -- Adalian allegedly never intended to comply with the Settlement Agreement when he entered into it; instead he was in the process of selling property to avoid paying Jou the promised amounts. *Jou II*, Doc. No. 21 ¶¶ 25-27, 31. *Jou II* further alleges that Adalian's false representations led Jou into entering into the Settlement Agreement, and that Jou would not have concluded the agreement if he had known Adalian's true intentions. *Id*. ¶¶ 28-31. As explained in the extensive background set forth above, these are the same substantive allegations that Jou made over and over during enforcement proceedings in *Jou I*.

32

Specifically, Jou repeatedly sought relief in *Jou I* based on "settlement fraud:" (1) in his initial October 6, 2010 Motion to Enforce, and subsequent arguments in obtaining the December 23, 2010 Judgment after the November 19, 2010 Findings and Recommendation was issued by Magistrate Judge Chang; (2) in subsequent proceedings in 2011 whereby Jou was attempting to collect the December 23, 2010 Judgment; (3) in contempt proceedings in 2014 and 2015 (after the bankruptcy stay was lifted) seeking Adalian's incarceration and imposition of fines for failure to pay; and (4) in his Motion for Examination of Judgment Debtor, filed after this court's February 5, 2015 Order vacating prior contempt orders. Having pursued such relief in *Jou I*, Jou's attempt to seek the same relief (with the addition of spoliation and conspiracy claims) in this suit falls squarely within the first prong of the res judicata analysis -- the claims are the same. *See, e.g.*, *Kauhane*, 71 Haw. at 464, 795 P.2d at 279 ("To determine whether a litigant is asserting the same claim in a second action, the court must look to whether the 'claim' asserted in the second action arises out of the same transaction, or series of connected transactions, as the 'claim' asserted in the first action.").

Likewise, Counts Three and Four rely on these core allegations regarding settlement fraud. Count Three refers to "intentionally destroyed or lost evidence designed to disrupt or defeat this lawsuit," which refers to "a potential lawsuit to be brought by Dr. Jou involving the partnership in California ('SCV

33

Partnership').”  *Jou II*, Doc. No. 21 ¶¶ 44-45.  Count Four simply incorporates all *Jou II's* factual allegations, and claims that Adalian conspired with others to accomplish an unlawful common purpose.  *Id*. ¶¶ 48-49.  These claims could have been made in *Jou I*.

Thus, unless an exception applies, the claims in *Jou II* are barred by res judicata.  *See Kauhane*, 71 Haw. at 463, 795 P.2d at 279 (“The doctrine . . . permits every litigant to have an opportunity to try his case on the merits; but it also requires that he be limited to one such opportunity.”) (citations and internal quotation marks omitted).

### 2.      *The Seventh Amendment does not preclude application of res judicata*

Jou argues that the enforcement proceedings in *Jou I* were equitable (decided by a court), and that he filed *Jou II* because he is seeking damages, a remedy for which he claims he has a Seventh Amendment right to a jury trial.  *See Adams v. Johns-Manville Corp.*, 876 F.2d 702, 709 (9th Cir. 1989) (“The motion to enforce the settlement agreement essentially is an action to specifically enforce a contract.  An action for specific performance without a claim for damages is purely equitable and historically has always been tried to the court.”) (citations and internal quotation marks omitted); *id.* at 710 (“[T]his motion [to enforce a settlement agreement] was in the form of specific performance, an equitable

34

proceeding not giving rise to a right to a jury trial.") (citation omitted).  Jou

contends that imposing a res judicata bar would deprive him of his right to have a

jury determine damages.

But both federal and Hawaii caselaw recognize -- as Jou himself

argued when obtaining the December 23, 2010 Judgment -- that "a judgment in the

amount of the alleged settlement . . . may be sought in a separate suit based on

standard contract principles *or* 'it may be accomplished within the context of the

underlying litigation without the need for a new complaint.'"  *Rohn Products*, 2010

WL 681304, at *3 (quoting *Hensley*, 277 F.3d at 540) (emphasis added); *see also*,

*e.g.*, *Arakaki*, 110 Haw. at 8 n.6, 129 P.3d at 511 n.6 ("Insofar as Arakaki's goal

was the Appellant's compliance with the settlement agreement, it could have filed

a motion in the circuit court to enforce the settlement *or* a separate action for

breach of contract.") (emphasis added); *Catullo v. Metzner*, 834 F.2d 1075, 1078

(1st Cir. 1987) ("A compromise agreement may be enforced by . . . a separate

proceeding thereon, or . . . by petition or motion in the original action asking for

such enforcement.") (quoting 15A C.J.S. *Compromise & Settlement* § 48 (1967));

*Marquette Bus. Credit, Inc. v. Gleason*, 2015 WL 3450113, at *6 (D. Minn. May

29, 2015) ("[P]arties have the option of filing separate breach of contract actions

for damages as opposed to motions to enforce the settlement agreement in the

existing case[.]").

And if Jou had chosen to file a separate action for damages (rather than seek to enforce the Settlement Agreement) he could have sought to have a jury determine any non-equitable relief in that action.[9]  But by fully pursuing relief by enforcement in *Jou I*, he effectively waived that right.  *See Ennenga v. Starns*, 677 F.3d 766, 776-77 (7th Cir. 2012) ("[Plaintiffs] insist that their state-court action for equitable relief cannot preclude this federal action for money damages because the former did not give them access to a jury. . . . [But they] could have litigated their substantive arguments in full in the original state-court action.  They were free to assert their claims for breach of fiduciary duty and seek money damages in that case; had they done so, they would have had access to a jury.") (applying res judicata bar).

That is, Jou's pursuit of relief in *Jou I* -- by a motion to enforce, including seeking damages, obtaining judgment, and collecting that judgment -- serves to bar him (without implicating the Seventh Amendment) from a second action asserting the same issues seeking legal relief before a jury.  *See Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 335 (1979) ("[A]n equitable determination can

---

[9] Further, if Jou had filed such a separate action, seeking both equitable and legal relief, a trial judge "has only limited discretion in determining the sequence of trial and 'that discretion . . . must, wherever possible, be exercised to preserve jury trial.'"  *Dollar Sys., Inc. v. Avcar Leasing Sys., Inc.*, 890 F.2d 165, 170 (1989) (quoting *Beacon Theaters, Inc. v. Westover*, 359 U.S. 500, 510 (1959).  "Only under the most imperative circumstances . . . can the right to a jury trial of legal issues be lost through prior determination of equitable claims [in that action]."  *Id.* (quoting *Beacon Theaters*, 359 U.S. at 510-11).

have collateral-estoppel effect in a subsequent legal action and . . . this estoppel does not violate the Seventh Amendment.") (citing *Katchen v. Landy*, 382 U.S. 323, 339 (1966)); *B & B Hardware, Inc. v. Hargis Indus., Inc.*, 135 S. Ct. 1293, 1304 (2015) ("As to the Seventh Amendment . . . the Court has already held that the right to a jury trial does not negate the issue-preclusive effect of a judgment, even if the judgment was entered by a juryless tribunal.") (citing *Parklane Hosiery*, 439 U.S. at 337).[10]

This result is consistent with the Restatement (Second) of Judgments §§ 24(1) & 25 (1982). Section 24 (entitled "Dimensions of 'Claim' for Purposes of Merger or Bar -- General Rule Concerning 'Splitting'") provides in part:

> (1) When a valid and final judgment rendered in an action extinguishes the plaintiff's claim pursuant to the rules of merger or bar (see §§ 18, 19*), the claim extinguished includes all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction, or series of connected transactions, out of which the action arose.*

(Emphasis added). And § 25 (entitled "Exemplifications of General Rule Concerning Splitting") explains:

> The rule of § 24 applies to extinguish a claim by the plaintiff against the defendant even though the plaintiff is prepared in the second action

---

[10] Among other issues, *B & B Hardware* held that an administrative Trademark Trial and Appellate Board finding (that is, a non-jury finding) can have a preclusive effect on a Lanham Act claim for damages (that is, a claim with a right to a jury trial) in federal court. 135 S. Ct. at 1310.

(1) To present evidence or grounds or theories of the case
not presented in the first action, or

(2) To seek remedies or forms of relief not demanded in
the first action.

*See also id.* cmt. i(2) ("[A] judgment granting or denying specific performance of a

contract should preclude an action for money damages for breach."); 18 Charles A.

Wright et al., *Federal Practice and Procedure* § 4410 ("[A] contract action for

specific performance cannot be followed by a second action for damages.")

(discussing legal and equitable remedies in the context of res judicata).

### 3.      *Hawaii law allowing a choice of remedies does not preclude application of res judicata*

Jou also relies on *Exotics Hawaii-Kona, Inc. v. E.I. Du Pont De*

*Nemours & Co.*, 116 Haw. 277, 172 P.3d 1021 (2007), for the principle under

Hawaii law that a party allegedly fraudulently-induced to enter into a settlement

agreement maintains "the traditional contract remedies of either (1) rescinding the

contract, returning any benefits received, and being returned to the status quo or

(2) affirming the contract, retaining the benefits, and seeking damages."  *Id.* at 291,

172 P.3d at 1035.  *See also, e.g.*, *Matsuura v. Alson & Bird*, 166 F.3d 1006, 1008

(9th Cir. 1999) ("[P]arties who have been fraudulently induced to enter into a

[settlement] contract have a choice of remedies: they may rescind the contract or

they may affirm the contract and sue for fraud.") (citation omitted) (applying

Delaware law).  Jou thus contends that, rather than rescinding the Settlement

Agreement, he has chosen the option to "affirm the contract" (*i.e.*, keep the

settlement amount) and "seek damages" (*i.e.*, sue for fraudulent inducement).  He

claims he is entitled to damages measured by the "fair compromise value of the

claim at the time of the settlement" in the absence of fraud (minus the amount he

actually received).  *Exotics Hawaii-Kona*, 116 Haw. at 298, 172 P.3d at 1042.

But the principle analyzed in *Exotics Hawaii-Kona* addressed a

situation where defrauded plaintiffs did not discover the fraudulent settlement

inducement (wrongfully withheld information in that litigation) until well after the

settlement was consummated and paid.  *See, e.g.*, 116 Haw. at 283, 172 P.3d at

1027 (discussing settlement agreements from 1994 and 1995, with a subsequent

fraudulent-inducement suit filed in 2000).  The defendants had paid the settlement

amount long before the plaintiffs discovered the fraudulent inducement.  Here, in

contrast, Jou pursued extensive enforcement proceedings to *force* Adalian to pay

the settlement amount as part of sought-after damages for a breach of that

agreement.  And Jou did so *knowing* at the time that he had been fraudulently

induced to enter the Settlement Agreement.

Although *Exotics Hawaii-Kona* might have allowed Jou to both

"affirm the contact" by enforcing it through equitable means, and also seek

additional damages for fraud, it only authorizes him to have done so in the *same*

action.  Stated differently, nothing in the *Exotics Hawaii-Kona* rule (allowing a remedy of "affirming the contract, retaining the benefits, and seeking damages") indicates that a party may "affirm the contract and retain the benefits" by litigating one action, and then "seek damages" in a *second* action (especially where, as in this case, the party also sought damages in the first action).  In retrospect, perhaps Jou could have invoked the *Exotics Hawaii-Kona* remedy in a suit for breach of the Settlement Agreement, seeking both the settlement amount and additional damages for fraud (where he also could have sought a jury trial).  But he chose to pursue that same or similar relief by way of enforcement proceedings in *Jou I*, and he now seeks the same or similar relief in *Jou II*.  As analyzed above, this path is barred by res judicata.  *Cf. Kirby v. Dole*, 736 F.2d 661, 664 (11th Cir. 1984) ("[O]ne who agrees to settle his claim cannot subsequently seek both the benefit of the settlement and the opportunity to continue to press the claim he agreed to settle.").

### 4.    *"Claim splitting" does not bar res judicata as to Counts One, Two, and Four of* **Jou II**

Finally, Jou contends that *Jou II* is not barred because the Settlement Agreement specifically reserved any claims related to the SCV Limited Partnership.  Jou argues that he properly "split" his claims such that res judicata does not apply.  *See, e.g.*, *Epic Metals Corp. v. H.H. Robertson Co.*, 870 F.2d 1574, 1576 (Fed. Cir. 1989) ("[A] party may expressly reserve in a consent

judgment the right to relitigate some or all issues that would have otherwise been

barred between the same parties."); *Dodd v. Hood River Cty.*, 59 F.3d 852, 862

(9th Cir. 1995) ("[C]onsent or tacit agreement is clear justification for splitting a

claim.") (citing Restatement (Second) Judgments § 26(1)(a)).  In this regard, § 26

provides, in pertinent part:

> (1) When any of the following circumstances exists, the general rule of § 24 does not apply to extinguish the claim, and part or all of the claim subsists as a possible basis for a second action by the plaintiff against the defendant:
>
> > (a) The parties have agreed in terms or in effect that the plaintiff may split his claim, or the defendant has acquiesced therein; or
> >
> > (b) The court in the first action has expressly reserved the plaintiff's right to maintain the second action[.]

"Any such reservation must be discerned within the four corners of the consent

decree, and cannot be expanded beyond the decree's express terms." *Epic Metals*

*Corp.*, 870 F.2d at 1577 (citation omitted).

Here, the Settlement Agreement reserved only claims regarding the

SCV Limited Partnership:

> The Parties agree that this Agreement is limited to the claims . . . regarding the Notes, and Dr. Jou and Mr. Adalian do not release claims, causes of action or defenses arising out of $282,000.00 invested by Dr. Jou in the Partnership.  Dr. Jou and Mr. Adalian agree that

41

> . . . the Parties reserve, and do not release or waive any claims, causes of action, or defenses arising out of the Partnership or its affairs.

*Jou II*, Doc. No. 55-2 ¶ 5.  That is, the Settlement Agreement did *not* reserve claims "which Dr. Jou has had, or claims to have or could have had against Mr. Adalian with regard to the Notes, including but not limited to those claims brought in or that could have been brought in [*Jou I*]."  *Id*. ¶ 4.

Counts One, Two, and Four in *Jou II's* First Amended Complaint are plainly "with regard to the Notes" -- they concern settlement fraud in the Settlement Agreement that, in turn, explicitly concerned only the Notes.[11]  And more specifically, these claims do not seek relief for "claims, causes of action or defenses arising out of $282,000.00 invested by Dr. Jou in the Partnership," *Jou II*, Doc. No. 55-2 ¶ 5, nor seek relief "arising out of" the SCV Limited Partnership matter itself.  Although the First Amended Complaint in *Jou II* discusses some details of the SCV Limited Partnership, *see, e.g.*, *Jou II*, Doc. 21 at 2-5, it does so to provide context for the Notes at issue in *Jou I*, and as background for the

---

[11] Count Four simply alleges a "civil conspiracy" between Adalian and unidentified others, after re-alleging and incorporating "the foregoing allegations."  *Jou II*, Doc. No. 21 at 17. Given those allegations, to the extent Count Four otherwise states a claim, it refers to conspiracy in entering into the Settlement Agreement regarding the Notes.  In any event, it appears that this civil conspiracy claim would fail as pled for other reasons.  *See, e.g.*, *Menashe v. Bank of N.Y.*, 850 F. Supp. 2d 1120, 1138 (D. Haw. 2012) ("Because 'there can be no civil claim based upon a conspiracy alone,' a plaintiff must allege an underlying actionable claim.") (citations omitted); *Caraang v. PNC Mortg.*, 795 F. Supp. 2d 1098, 1126 (D. Haw. 2011) ("Hawaii does not recognize an independent cause of action for 'civil conspiracy.'  Such a theory of potential liability is derivative of other wrongs.") (citations omitted).

Settlement Agreement regarding those Notes. That is, the discussion of the SCV Limited Partnership serves primarily as background for *Jou II's* claims regarding alleged settlement fraud. The damages sought in *Jou II* are alleged to be measured by the settlement value of *Jou I* in July 2010, absent the actual settlement amount. *Id.* at 12-13. And where *Jou II* mentions the SCV Limited Partnership in relation to damages, it is referring to the Settlement Agreement. *See id.* at 18 (seeking, regarding Count Four, "special damages in the amount of the caps for the SCV Partnership dispute in the Settlement Agreement").

Jou also points out that he filed a November 1, 2010 Reply in support of his original October 6, 2010 Motion to Enforce stating that he "reserves his right to sue independently for fraud and/or specific performance." *Jou I*, Doc. No. 76 at 9. But this unilateral statement -- which is inconsistent with the fact that Jou was also seeking relief for "fraud and/or specific performance" in the enforcement proceeding itself -- cannot serve as a valid method of "claim splitting." The "splitting" must be bilateral. *See, e.g.*, Restatement (Second) Judgments § 26(1)(a) (allowing a second action if "[t]he parties have *agreed* in terms or in effect that the plaintiff may split his claim") (emphasis added); *Dodd*, 59 F.3d at 862 ("[C]onsent or tacit agreement is clear justification for splitting a claim[.]").

In short, Counts One, Two, and Four in *Jou II* do not allege claims that were "expressly" (or otherwise) reserved so as to avoid a res judicata bar. These claims are dismissed with prejudice.

###### 5.  *Count Three is vague and, as pled in the First Amended Complaint, is only barred to the extent it seeks relief "regarding the Notes"*

Count Three ("Intentional Spoliation of Evidence"), however, might be read more broadly -- although the claim is unclear, it is possible that it (or a part of it) has been reserved or "split" from *Jou I* so as not to be precluded as a matter of law.  That is, it is inappropriate at this judgment-on-the-pleadings stage to bar the whole of Count Three on res judicata grounds.

Count Three alleges that Adalian "knew of a potential lawsuit to be brought by Dr. Jou involving the [SCV Limited Partnership]," that Adalian "intentionally destroyed or lost evidence designed to disrupt or defeat this lawsuit," and that Adalian's "intentional destruction or loss of evidence did, in fact[,] disrupt this lawsuit regarding the SCV Partnership."  *Jou II*, Doc. No. 21 ¶¶ 44-46.  It then alleges that, because of the "intentional destruction or loss of evidence," Jou "is unable to prove the partnership fraud case, all to Plaintiff's damages in the amount of $282,000, plus a 20% rate of return, and $25,000 for general damages."  *Id*. ¶ 47.

But Count Three is completely unclear as to what "potential lawsuit" regarding the SCV Limited Partnership was "disrupted" by the alleged "destruction of evidence." *Id*. ¶¶ 44-46. It is also unclear what "partnership fraud case" Jou was allegedly unable to prove by the destruction of evidence. *Id*. ¶ 47. More generally, it is unclear whether Count Three is a claim "arising out of $282,000.00 invested by Dr. Jou in the [SCV Limited] Partnership" and "arising out of the Partnership or its affairs" (and not a claim "with regard to the Notes") -- in which case it would be a "reserved" claim under the Settlement Agreement. *See Jou II*, Doc. No. 55-2 ¶¶ 4-5. The First Amended Complaint simply does not allege enough factual details for the court to conclude -- one way or the other -- that Count Three fits entirely within the reservation, or whether it is barred as a claim "with regard to the Notes." *Id*. It follows that Adalian has not met his burden to establish his res judicata defense as to all of Count Three. *See, e.g*., *Bremer v. Weeks*, 104 Haw. 43, 54, 85 P.3d 150, 161 (2004) ("The party asserting claim preclusion has the burden of establishing [the elements]."). But to the extent based on the Notes, it is barred.

### 6.    *Count Three is time-barred*

Adalian also argues that Count Three fails because (1) Hawaii appellate courts have not recognized an independent cause of action under Hawaii

law for "intentional spoliation of evidence," and (2) even if Hawaii recognized

such a cause of action, it is barred by the statute of limitations.

As described in *Matsuura v. E.I. du Pont de Nemours & Co.*, 102

Haw. 149, 73 P.3d 687 (2003), a judge of this court certified the question (among

others) to the Hawaii Supreme Court under Hawaii Rule of Appellate Procedure 13

whether Hawaii law recognizes a civil cause of action for damages for intentional

and/or negligent spoliation of evidence. *Id.* at 150-51, 73 P.3d at 688-89. In this

regard, *Matsuura* recognized elements of such a tort in other jurisdictions:

> The few jurisdictions that recognize a cause of action for
> intentional spoliation (as opposed to negligent
> spoliation[]) of evidence require a showing of the
> following elements: (1) the existence of a potential
> lawsuit; (2) the defendant's knowledge of the potential
> lawsuit; (3) the intentional destruction of evidence
> designed to disrupt or defeat the potential lawsuit;
> (4) disruption of the potential lawsuit; (5) a causal
> relationship between the act of spoliation and the
> inability to prove the lawsuit; and (6) damages.

*Id.* at 166, 73 P.3d at 704 (citations omitted). *Matsuura* analyzed the facts at issue

in that case, and determined that the plaintiffs did not state such a claim, even

assuming that Hawaii would recognize the tort with those elements. *Matsuura* thus

concluded that "[b]ecause the facts alleged cannot support [a] spoliation claim, this

court need not resolve whether Hawaii law would recognize a tort of spoliation of

evidence." *Id.* at 168, 73 P.3d at 706. Accordingly, the Hawaii Supreme Court

declined to answer the certified question.  *Id.*  And the court is unaware of any other Hawaii authority that has recognized whether the tort exists after *Matsuura* was decided in 2003.

This court -- like *Matsuura* -- also need not decide (at this stage) whether *Jou II* is an appropriate case to address whether Hawaii would recognize the tort (or to again certify the question to the Hawaii Supreme Court).  Based on *Jou II's* allegations, even assuming Hawaii would recognize a cause of action for damages for intentional spoliation of evidence, the court agrees with Adalian that Count Three is time-barred.

"A federal court sitting in diversity applies the substantive law of the state, including the state's statute of limitations."  *Albano v. Shea Homes Ltd. P'ship*, 634 F.3d 524, 530 (9th Cir. 2011) (citation omitted).  "[A] two-year statute of limitations generally applies to tort actions in Hawaii."  *Jou v. Nat'l Interstate Ins. Co. of Hawaii*, 114 Haw. 122, 128, 157 P.3d 561, 567 (Haw. App. 2007) (citing Haw. Rev. Stat. § 657-7).  But, under Hawaii law, "'[p]ersonal actions of any nature whatsoever not specifically covered by the laws of the State' have a limitations period of six years."  *Hubbart v. State of Hawaii Office of Consumer Prot. Dep't of Commerce & Consumer Affairs*, 2008 WL 373167, at *5 (D. Haw. Feb. 11, 2008) (citing Haw. Rev. Stat. § 657-1(4)).  "Claims sounding in fraud,

whether based on state or federal law, are governed by this six-year statute of limitations." *Id.* (citations omitted).

If Hawaii recognizes a cause of action for intentional spoliation of evidence, it is unclear which limitation period (two years for torts or six years for a claim sounding in fraud) would apply -- "intentional spoliation" appears to be both a tort, and a cause of action sounding in fraud.  But even applying the longer six-year limitation period, Count Three is time-barred.

Count Three alleges that Adalian "intentionally destroyed or lost evidence designed to disrupt or defeat this lawsuit," referring to documents "demanded on March 19, 2009."  *Jou II*, Doc. No. 21 ¶ 45.  Elsewhere, the First Amended Complaint alleges:

> 19.  On February 23, 2009, Plaintiff discovered . . . in a deposition of A Joel Criz that in the 'early '90s' he (Criz) stopped overseeing the development project subject to the Limited Partnership Agreement.
>
> 20.  Promptly on March 19, 2009, Plaintiff sent a demand on Mr. Adalian for documents relating to the partnership interest abandoned by the partnership's designated consultant or manager.  Therein, Plaintiff informed Defendant Adalian "we determined that property belonging to SCV Development Investors may have been sold, transferred or encumbered to pay various costs associated with maintaining the partnership["].

*Jou II*, Doc. No. 21 at 8.

Given those allegations, it appears that Jou's claim of spoliation of evidence was discovered, at the latest, in March 2009. *Jou II* was not filed until April 29, 2015, *Jou II*, Doc. No. 1, which was over six years after alleged discovery of the spoliation. *See Hays v. City & Cty. of Honolulu*, 81 Haw. 391, 396, 917 P.2d 718, 723 (1996) (reiterating under Hawaii law that a limitations period "commences to run when plaintiff discovers, or through the use of reasonable diligence should have discovered, (1) the damage; (2) the violation of the duty; and (3) the causal connection between the violation of the duty and the damage") (quoting *Jacoby v. Kaiser Found. Hosp.*, 1 Haw. App. 519, 525, 622 P.2d 613, 617 (1981)).

In response, Jou appears to argue that at least some of the alleged spoliation of evidence occurred after March 19, 2009, that is, within a six-year limitations period. *See Jou II*, Doc. No. 55 at 28 (emphasizing that the First Amended Complaint alleges that "[j]ust some of the documents needed were demanded on March [19], 2009"). Likewise, he also cites to other confusing provisions of the First Amended Complaint referencing actions in March 2010. *Id.* The court, however, is unable to discern from the First Amended Complaint what alleged "spoliation" actions occurred *after* March 19, 2009. Essentially -- as with *Jou II's* vague allegations as to whether or not Count Three is a claim "regarding the SCV Limited Partnership" for purposes of unambiguously reserving the claim

in the July 6, 2010 Settlement Agreement -- the court cannot clearly discern any part of Count Three that withstands a statute-of-limitations challenge.  As pled, Count Three is time-barred.

Nevertheless, given that much of the First Amended Complaint focuses on settlement fraud (with is barred by res judicata), and not on the spoliation claim, the court will grant Jou leave to amend to file a Second Amended Complaint to attempt to allege a claim for "intentional spoliation of evidence" that is not time-barred (and that otherwise clearly fits within the Settlement Agreement's exception for claims "with regard to" the SCV Limited Partnership). Jou is granted **twenty-one** days (*i.e.*, until September 22, 2016) to file such a Second Amended Complaint.  A Second Amended Complaint may not, however, re-allege any settlement fraud claims "regarding the Notes" which have been dismissed with prejudice.  *See, e.g*., *Lacey v. Maricopa Cty.*, 693 F.3d 896, 928 (9th Cir. 2012) (en banc) (clarifying that claims dismissed with prejudice need not be re-alleged in an amended complaint to preserve them for appeal).  To be clear, Jou is only granted leave to amend his spoliation of evidence claim, not to add other claims related to the SCV Limited Partnership.

///

///

///

# V.  <u>CONCLUSION</u>

For the foregoing reasons, Defendant's Motion for Judgment on the Pleadings, Doc. No. 41, is GRANTED -- the First Amended Complaint is DISMISSED.  The dismissal is with prejudice as to Counts One, Two, and Four. Plaintiff, however, is granted LEAVE TO AMEND as to Count Three.  A Second Amended Complaint must be filed within twenty-one days (or by September 22, 2016).  If a Second Amended Complaint is not filed by that date, the court will instruct the Clerk of Court to enter judgment in favor of Adalian.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, September 1, 2016.



/s/ J. Michael Seabright
J. Michael Seabright
Chief United States District Judge

*Jou v. Adalian*, Civ. No. 15-00155 JMS-KJM, Order Granting Defendant's Motion For Judgment On The Pleadings, Doc. No. 41, with Leave to Amend Count Three