IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| EMERSON M.F. JOU, M.D., <br><br> Plaintiff, <br><br> vs. <br><br> GREGORY M. ADALIAN, <br><br> Defendant. | Civ. No. 15-00155 JMS-KJM <br><br> ORDER DENYING PLAINTIFF'S "RENEWED MOTION FOR SUMMARY JUDGMENT/PARTIAL SUMMARY ADJUDICATION AND/OR AN FRCP 56(g) ORDER," ECF NO. 127 |

**ORDER DENYING PLAINTIFF'S "RENEWED MOTION FOR SUMMARY JUDGMENT/PARTIAL SUMMARY ADJUDICATION AND/OR AN FRCP 56(g) ORDER," ECF NO. 127**

**I. INTRODUCTION**

Plaintiff Emerson M.F. Jou ("Plaintiff" or "Jou") moves for summary judgment on his claim for Intentional Spoliation of Evidence ("Spoliation") against Defendant Gregory M. Adalian ("Defendant" or "Adalian") as set forth in the Second Amended Complaint ("SAC"). He also seeks summary judgment as to certain affirmative defenses raised in Defendant's Answer.

Based on the following, because genuine issues of material fact exist, Plaintiff's Motion is DENIED.

1

## II. **BACKGROUND**

The court need not reiterate the background of this long-running and complex dispute; the background is set forth in detail in two of this court's prior Orders: (1) a February 5, 2015 Order in a related case, *Jou v. Adalian*, Civ. No. 09-00226 JMS-BMK (D. Haw.), that denied Plaintiff's motion seeking an order to arrest Defendant for repeated failures to pay an outstanding judgment, *see Jou v. Adalian*, 2015 WL 477268 (D. Haw. Feb. 5, 2015) ("*Jou I*"); and (2) a September 1, 2016 "Order Granting Defendant's Motion for Judgment on the Pleadings, with Leave to Amend Count Three" (the "September 1, 2016 Order") in this suit, *see Jou v. Adalian*, 2016 WL 4582042 (D. Haw. Sept. 1, 2016) ("*Jou II*").

Generally, two types of claims were at issue in *Jou I* and *Jou II*: (1) those "with regard to the Notes" between Jou and Adalian, and (2) those "arising out of the SCV Limited Partnership or its affairs." *Jou II*, 2016 WL 4582042, at *2 n.3. The September 1, 2016 Order dismissed with prejudice, on res judicata grounds, Plaintiff's three claims in the First Amended Complaint ("FAC") that were "with regard to the Notes" -- those three claims sounding in settlement fraud arising out of a July 6, 2010 settlement agreement were or could have been litigated in the previous suit (Civ. No. 09-00226 JMS-BMK). *See id.* at *17. But the September 1, 2016 Order also granted Plaintiff leave to amend his vague and

potentially time-barred claim for Spoliation -- a claim that could plausibly have "arisen out of the SCV Limited Partnership or its affairs" (and thus not be barred by res judicata). *Id.* at *20. That is, although the FAC alleged Spoliation in general terms, the claim was unclear and time-barred as it was pled in the FAC.[1] *Id.*

Accordingly, on September 22, 2016, Plaintiff filed the SAC, which asserts a single count for Spoliation, which contends (among other assertions) that Plaintiff did not know Defendant had "spoliated SCV Records" until August 9, 2011 and September 7, 2011 (within a six-year limitations period and when Defendant allegedly knew of a potential lawsuit regarding the SCV Limited Partnership). SAC ¶ 9C, ECF No. 68. Specifically, the SAC alleges that Defendant "intentionally destroyed, concealed, or otherwise spoliated evidence designed to disrupt or defeat Plaintiff's potential lawsuit," *id.* ¶ 10, and that Plaintiff only discovered such spoliation in August and September of 2011 during Defendant's bankruptcy proceedings in the Bankruptcy Court for the Middle District of Pennsylvania. *Id.* ¶¶ 10B, 10C. Plaintiff also alleges in some detail that "[t]here was a causal relationship between the acts of spoliation and the inability to

---

[1] This suit was initially filed on April 29, 2015. *See* Compl., ECF No. 1.

3

prove the . . . claims in a lawsuit[,]" *id.* ¶ 17, and that he suffered damages as a result of the alleged spoliation, *id.* ¶ 18.

On May 4, 2017, Plaintiff filed his "Renewed Motion for Summary Judgment/Partial Summary Adjudication," seeking:

- "[S]ummary judgment in Plaintiff's favor on the dispute of liability, and partial summary judgment on a disputed item of damages, with the remaining damages in dispute to be for the trier of fact";

- "FRCP 56(a) partial summary judgment in Plaintiff's favor on some of Defendant Gregory Adalian's affirmative defense[s], including Fourth (*res judicata*/collateral estoppel); Eighth (standing); Sixteenth (statutes of limitations)"; and

- "[A]n FRCP 56(g) Order 'stating any material fact -- including an item of damages or other relief -- that is not genuinely in dispute and treating the fact as established in the case.'"

Pl.'s Mot. at 2, ECF No. 127. Defendant filed his Opposition on June 2, 2017, ECF No. 134, and Plaintiff filed his Reply on June 16, 2017, ECF No. 147.[2] The court decides the Motion under Local Rule 7.2(d) without an oral hearing.

---

[2] In response to Plaintiff's objections, Defendant and his counsel filed supplemental Declarations to correct possible or perceived defects under 28 U.S.C. § 1746, making clear that

(continued . . .)

4

# III. **STANDARD OF REVIEW**

Summary judgment is proper where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Rule 56(a) mandates summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also Broussard v. Univ. of Cal. at Berkeley*, 192 F.3d 1252, 1258 (9th Cir. 1999).

"A party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and of identifying those portions of the pleadings and discovery responses that demonstrate the absence of a genuine issue of material fact." *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007) (citing *Celotex*, 477 U.S. at 323); *see also Jespersen v. Harrah's Operating Co.*, 392 F.3d 1076, 1079 (9th Cir. 2004). "When the moving party has

---

(. . . continued)
their assertions were true and correct under penalty of perjury. *See* ECF Nos. 146, 160. Given these supplemental Declarations, the corresponding Declarations at ECF Nos. 132-1, 134-1, and 134-3 are sufficient to comply with § 1746. *See, e.g.*, *Commodity Futures Trading Comm'n v. Topworth Int'l, Ltd.*, 205 F.3d 1107, 1112 (9th Cir. 1999) ("§ 1746 requires only that the declaration 'substantially' comply with the statute's suggested language[.]"); *Schroeder v. McDonald*, 55 F.3d 454, 460 n.10 (9th Cir. 1995) (allowing, under § 1746, a verification under penalty of perjury that stated "the facts stated in the . . . complaint [are] true and correct as known to me"); *Cobell v. Norton*, 391 F.3d 251, 260 (D.C. Cir. 2004) ("A declaration or certification that includes the disclaimer 'to the best of the declarant's knowledge, information or belief' is sufficient under [§ 1746].") (square brackets omitted).

carried its burden under Rule 56[(a)] its opponent must do more than simply show that there is some metaphysical doubt as to the material facts [and] come forward with specific facts showing that there is a *genuine issue for trial*." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986) (citation and internal quotation marks omitted).

"An issue is 'genuine' only if there is a sufficient evidentiary basis on which a reasonable fact finder could find for the nonmoving party, and a dispute is 'material' only if it could affect the outcome of the suit under the governing law." *In re Barboza*, 545 F.3d 702, 707 (9th Cir. 2008) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). When considering the evidence on a motion for summary judgment, the court must draw all reasonable inferences in the light most favorable to the nonmoving party. *Friedman v. Live Nation Merch., Inc.*, 833 F.3d 1180, 1184 (9th Cir. 2016).

## IV. **DISCUSSION**

**A.** **Intentional Spoliation of Evidence**

As explained in the September 1, 2016 Order, it is unclear whether a cause of action for Spoliation exists under Hawaii law. No Hawaii case has adopted the tort, and *Matsuura v. E.I. du Pont de Nemours & Co.*, 102 Haw. 149, 73 P.3d 687 (2003), explicitly found it unnecessary to decide whether such a tort

exists in Hawaii common law. *Id.* at 168, 73 P.3d at 706. *Matsuura*, however, recognized the following elements of such a tort in other jurisdictions, and explained why those elements would not be met under the facts of that case:

> The few jurisdictions that recognize a cause of action for intentional spoliation (as opposed to negligent spoliation[]) of evidence require a showing of the following elements: (1) the existence of a potential lawsuit; (2) the defendant's knowledge of the potential lawsuit; (3) the intentional destruction of evidence designed to disrupt or defeat the potential lawsuit; (4) disruption of the potential lawsuit; (5) a causal relationship between the act of spoliation and the inability to prove the lawsuit; and (6) damages.

*Id.* at 166, 73 P.3d at 704 (citations omitted). Essentially, *Matsuura* assumed Spoliation's basic elements from "the few jurisdictions that recognize" the tort, but found no reason to adopt the cause of action because the plaintiffs would necessarily have failed to prove such a claim.

Likewise, at least at this stage, this court can address Plaintiff's Motion and analyze whether questions of fact exist by assuming the basic elements of the tort as recognized in other jurisdictions (but without explicitly predicting whether the Hawaii Supreme Court would recognize the tort). Further, for purposes of this Motion only, the court can assume -- as Plaintiff argues -- that evidence need not actually be physically destroyed to constitute "spoliation." *See, e.g.*, *Elliott-Thomas v. Smith*, ___ N.E.3d ___, 2017 WL 758481, at *5 (Ohio Ct.

7

App. Feb. 27, 2017) ("[T]he [element] 'willful destruction of evidence by defendant designed to disrupt the plaintiff's case' includes one's willful act of rendering evidence useless, such as hiding evidence.").

With those assumptions, the court easily concludes that Plaintiff is not entitled to summary judgment in his favor on his Spoliation claim. Notably, *Defendant* is not moving for summary judgment on a claim *against* him; rather, *Plaintiff* is moving for summary judgment on his affirmative claim -- a claim on which he would have the burden of proof at trial.

"When the party moving for summary judgment would bear the burden of proof at trial, 'it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial.'" *C.A.R. Transp. Brokerage Co., Inc. v. Darden Rests., Inc.,* 213 F.3d 474, 480 (9th Cir. 2000) (quoting *Houghton v. South,* 965 F.2d 1532, 1536 (9th Cir. 1992)). In this instance, then, Plaintiff "must establish beyond peradventure *all* of the essential elements of the claim . . . to warrant judgment in his favor." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986). Put another way, "his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States,* 799 F.2d 254, 259 (6th Cir.

1986) (quoting W. Schwarzer, *Summary Judgment Under the Federal Rules: Defining Genuine Issues of Material Fact*, 99 F.R.D. 465, 488 (1984)).

Plaintiff has not met this burden -- questions of material fact exist on almost every element of a Spoliation claim, as those elements are discussed in *Matsuura*:

- What was Defendant's "knowledge of a potential lawsuit" regarding the SCV Limited Partnership when potential evidence was "spoliated"?

- Did Defendant actually intentionally destroy or conceal evidence?

- Was such destruction or concealment "designed to disrupt or defeat" such a potential lawsuit?

- Was there actual "disruption" of the potential lawsuit?

- Was there a "causal relationship" between the act of spoliation and Plaintiff's inability to prove the lawsuit?

In particular, in Defendant's Declarations of June 1, 2017, ECF No. 134-1, and (to a lesser extent) of May 23, 2017, ECF No. 132-1, Defendant specifically and repeatedly denies the essential elements of Spoliation, and explains in detail the context of each of his statements. For example, Defendant declares that "at all times, all accounting records and other financial records for SCV were prepared and maintained by Joel Criz and were not in my possession." Adalian Decl. (June 1, 2017) ¶ 18. He explains:

9

> Regarding those documents requested in Mr. Shaw's March 19, 2009 letter . . . they either did not exist, or they were public records that Dr. Jou could have otherwise obtained readily, or they were documents that Dr. Jou already had or documents he could have gotten from elsewhere. Anything deemed responsive to that letter produced in February 2017, I did not intentionally withhold or hide from Dr. Jou or anyone else because I honestly had no idea I had them.

*Id.* ¶ 20.

> At no point in time did I refuse to give Dr. Jou any records relating to SCV that I knew I had. . . . I never had any such documents "under my control," and if they were, I had no understanding of this and I never intentionally took any steps to prevent Dr. Jou from subpoenaing them or just simply asking for copies of any documents from any third parties.

*Id.* ¶ 21.

> To be clear, at no point in time did I ever intentionally destroy or hide or alter or mutilate any records of SCV. As far as I know, I still have all of the SCV records I ever had. For Plaintiff's past requests, I turned over all responsive documents that I found, albeit few. I believe my attorneys at that time - before that relationship was severed in *Jou I* and I went forward trying to defend that case *pro se* - also turned over responsive documents to Dr. Jou's counsel. I do not have those documents, and I do not know where they are, but if Dr. Jou has them, his complaints regarding them are empty.

*Id.* ¶ 26.

> Other than my own copy of the partnership agreement which Dr. Jou also has, my own K-1 forms that I received as an investor just like Dr. Jou did, and the engineering and architectural documents stated in the prior paragraph and above, as well as[] those few other documents located and produced in

February 2017, I do not have and never had the other documents or types of documents that Dr. Jou is now claiming I purposefully destroyed or hid.

*Id.* ¶ 28.

. . . . I stated under oath in a bankruptcy case that, consistent with my statements under oath stated herein, I did not have many or most of the SCV records. This is correct. I said that because it was true. . . . [A]nd once more, I never intentionally destroyed, altered, hid, or otherwise intentionally "spoliated" any documents to thwart an action by Dr. Jou or anyone else regarding bringing claims related to SCV.

*Id.* ¶ 41.

I have taken no intentional actions that have ever deprived Dr. Jou of any documents that he previously asked for or which would in any way have affected his ability to inquire into or try to obtain from SCV the funds he invested in it.

*Id.* ¶ 45.

[T]his past winter, upon my search in this action in response to Dr. Jou's document demands here, I was told by counsel to look once more. All my old files had been transferred to storage in California, so I searched the storage area for all SCV files, and nothing new was discovered. However, once finished, I decided to simply clean out the storage area completely and dispose of old unnecessary items. During that exercise, I located a discrete cache of 88 pages of limited, responsive, SCV-related documents that had been filed in a cabinet that did not indicate in any way that they pertained to SCV, but, rather, which held old, personal utilities bills. Most of these SCV documents are copies of things that were sent to me from Mr. Criz. All of these documents were given to Plaintiff in February. Of importance and telling, had I found some of these documents earlier, I could have used them and they would have helped me significantly in my defense of the adversary

> proceeding brought against me by Dr. Jou in my Pennsylvania bankruptcy case, so I would not have had any motivation to hide them from Dr. Jou.

*Id.* ¶ 48.

> Plaintiffs complaint alleges that I "intentionally" spoliated evidence. To be clear, at no time did I have any inten[t] to conceal or hide these recently-located (or any other) documents from Dr. Jou or anyone else, nor did I discover them conveniently when I did for any strategic purpose vis-a-vis pretrial deadlines.

*Id.* ¶ 49.

> Most of these documents I received from Mr. Criz, unless they indicate that they were sent directly to me. Never did I intentionally hide or alter these documents. Rather, at the time Dr. Jou and his attorneys and the Court in my bankruptcy cases requested and ordered that I produce and disclose documents, I attempted to do so in good faith, looked every place that I reasonably believed such documents could exist, and I provided everything that I located at the time but did not find these 88 pages because they had somehow ended up loose in the extraneous, cabinet I mentioned.

*Id.* ¶ 54.

> In conclusion, I never intentionally spoliated any documents or evidence to thwart or obstruct a lawsuit against me by Dr. Jou regarding SCV, nor did I ever embezzle or steal any funds from SCV, and I did not participate in any scheme with anyone else to do so.

*Id.* ¶ 55. *See also, e.g.*, Adalian Decl. (May 23, 2017) ¶ 15 ("[A]t no time did I

have any intent to conceal or hide these recently-located (or any other) documents

from Dr. Jou or anyone else, and I never destroyed any documents in this case or in

12

any other or an any other time. Nor did I remove any documents or portions of documents or create any 'gaps' in them[.]").³

In response to Defendant's lengthy Declarations, Plaintiff repeatedly contends that Defendant's statements are false. *See, e.g.*, Jou Decl. (June 16, 2017) ¶¶ 3, 4, 7, 8, 11, 13, 15, 16, 17; ECF No. 148-1. But this is a summary judgment motion, and such credibility determinations are for a fact-finder, not for summary judgment. *See, e.g.*, *McGinest v. GTE Serv. Corp.*, 360 F.3d 1103, 1113 n.5 (9th Cir. 2004) ("[I]t is axiomatic that disputes about material facts and credibility determinations must be resolved at trial, not on summary judgment."); *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987) ("Nor does the judge make credibility determinations with respect to statements made in affidavits, answers to interrogatories, admissions, or depositions."); *Nigro v. Sears, Roebuck & Co.*, 784 F.3d 495, 497 (9th Cir. 2015) (stating that a court cannot disregard a declaration at summary judgment "solely based on its self-serving nature"). At this summary judgment stage, the court must construe

---

³ Assuming their truth, Defendant's Declarations are sufficient to create genuine issues of fact. This Order thus need not reiterate the ample other evidence in the record that also creates disputes of material fact. *See, e.g.*, Def.'s Ex. 6, Criz Dep. at 34-38 (testifying about other causes of the failure of the SCV project -- relevant to the "causal relationship" element of Spoliation -- and also indicating that Defendant did not intentionally destroy or discard SCV-related documents). The court also need not address Defendant's alternative request for a Rule 56(d) continuance.

evidence in the light most favorable to Defendant -- and doing so means the court DENIES Plaintiff's Motion regarding Spoliation.[4]

## B. Defendant's Affirmative Defenses

Plaintiff also moves for summary judgment as to Defendant's sixteenth affirmative defense, which states that Plaintiff's claims "are barred, in whole or in part, due to expiration of the applicable statutes of limitations." Def.'s Answer ¶ 50, ECF No. 72. *See* Fed. R. Civ. P. 56(a) ("A party may move for

---

[4] Plaintiff makes a confusing argument, based on a "sham affidavit" theory, that the court should strike and disregard Defendant's entire Declarations because they contradict his prior April 5, 2017 deposition testimony. Pl.'s Reply at 25, ECF No. 147. *See Yeager v. Bowlin*, 693 F.3d 1076, 1080 (9th Cir. 2012) ("The general rule in the Ninth Circuit is that a party cannot create an issue of fact by an affidavit contradicting his prior deposition testimony.") (quotation marks and citations omitted). But Plaintiff's argument appears to be limited to contending that Defendant only contradicted himself as to "matters in [Plaintiff's Concise Statement of Facts ¶ 32]" regarding whether "spoliated" documents were "in [Defendant's] exclusive possession and/or were not reasonably available elsewhere." Pl.'s Reply at 22. And even then, Plaintiff fails to point to any specific deposition testimony that is clearly inconsistent with his subsequent Declarations. *See Yeager*, 693 F.3d at 1080 ("[T]he inconsistency between a party's deposition testimony and subsequent affidavit must be clear and unambiguous to justify striking the affidavit.") (quotation marks and citation omitted). Indeed, Defendant's deposition appears to be entirely consistent with his subsequent Declarations in explaining the circumstances of the February 2017 production of documents that Plaintiff finds so troubling. *See, e.g.*, Adalian Dep. at 52, ECF No. 132-9 ("I found [the document] in a file cabinet that -- after my attorney asked me to look in every place possible for documents, I found it in a cabinet that I . . . was going through cleaning, along with my DIRECTTV and some other utility bills.").
In short, Plaintiff has not met his burden to demonstrate that this court should ignore Defendant's Declarations. *See Yeager*, 693 F.3d at 1080 ("[T]he sham affidavit rule should be applied with caution because it is in tension with the principle that the court is not to make credibility determinations when granting or denying summary judgment.") (quotation marks and citations omitted). "[T]he non-moving party is not precluded from elaborating upon, explaining or clarifying prior testimony elicited by opposing counsel on deposition and minor inconsistencies that result from an honest discrepancy, a mistake, or newly discovered evidence afford no basis for excluding an opposition affidavit." *Id.* at 1081 (quotation marks and citations omitted).

summary judgment, identifying each claim *or defense* -- or the part of each claim or defense -- on which summary judgment is sought.") (emphasis added).

*Jou II* dismissed Plaintiff's initial Spoliation claim primarily because, as it was vaguely pled in the FAC, it was barred by a six-year limitations period. 2016 WL 4582042, at *19-20. In particular, the FAC alleged that (1) Plaintiff discovered on February 23, 2009, certain problems with "the development project subject to the [SCV] Limited Partnership Agreement," *id.* at *19 (quoting FAC ¶ 19); and (2) Plaintiff had then "on March 19, 2009," sent a demand to Defendant "for documents relating to the partnership interest," having "determined that property belonging to SCV Development Investors may have been sold, transferred or encumbered to pay various costs[.]" *Id.* (quoting FAC ¶ 20). It thus appeared that Plaintiff discovered at least some "spoliation" in early 2009 -- outside a six-year limitations period. *Id.* at *20.

Plaintiff, however, amended his Spoliation claim such that the SAC now clearly alleges that he did not discover that documents or potential evidence had actually been destroyed or concealed until August or September of 2011. SAC ¶¶ 10B, 10C. In this regard, it is important to distinguish between Plaintiff's alleged discovery of certain problems with the SCV Limited Partnership (outside a six-year limitations period), and his alleged discovery of purported *spoliation* of

15

documents related to those problems. That is, there is a difference between Plaintiff's request for information from Defendant in March 2009, and Plaintiff's alleged discovery in 2011 that at least some of what he had been requesting in March 2009 had been destroyed or concealed. It is entirely plausible that Plaintiff knew about problems with the SCV Limited Partnership outside the limitations period, but did not know about spoliation of documents until a time inside the limitations period. With that distinction in mind, the court addresses Plaintiff's Motion as to Defendant's limitations defense.

In support, Plaintiff proffers evidence supporting the SAC's allegations, which, taken as true, would preclude Defendant's statute of limitations defense. *See, e.g.*, Jou Decl. (May 4, 2017), ECF No. 128-1 (detailing Plaintiff's quest for certain SCV records in 2009 and 2010, and his discovery in 2011 that certain information may have been destroyed). This evidence itself would have been sufficient to create a genuine issue of fact if *Defendant* had moved for summary judgment on a statute of limitations basis. Nevertheless, it is premature to determine that Plaintiff's Spoliation claim is *not* entirely time-barred as a matter of law. That is, summary judgment is inappropriate at this stage as to Defendant's sixteenth affirmative defense.

Again, Defendant's defense alleges that Plaintiff's claims "are barred, *in whole or in part*" by the applicable statutes of limitations. Answer ¶ 50 (emphasis added). It is unclear, however, whether Plaintiff's Spoliation claim would be analyzed on a document-by-document basis. And if analyzed document-by-document, Plaintiff may have had sufficient knowledge outside the limitations period that certain documents were being spoliated (and thus be time-barred as to those documents), but as to other documents only discovered their spoliation in 2011 (and thus not be time-barred). As it is, Defendant points out that (similar to how this court interpreted the FAC) the SAC's allegations themselves could indicate that Plaintiff knew of certain "spoliation" before April 29, 2009. SAC ¶ 8C; *see also* FAC ¶ 45 ("Defendant intentionally destroyed or lost evidence designed to disrupt or defeat this lawsuit. Just some of the documents needed were demanded on March 19, 2009."). The SAC necessarily admits that Plaintiff suspected enough in early 2009 to have counsel seek SCV documents from Defendant -- and it is thus plausible that he suspected that at least some documents may have been "spoliated" at that time.

Further, and just as important, it remains unclear whether the limitations period is actually six years (as opposed to two years for a tort claim). As discussed in the September 1, 2016 Order, the court only assumed that a six-

17

year period applies for purposes of addressing *Defendant's* prior motion for judgment on the pleadings. *See Jou II*, 2016 WL 4582042, at *19 (applying a six-year period for claims sounding in fraud, but recognizing that "[i]If Hawaii recognizes a cause of action for intentional spoliation of evidence, it is unclear which limitation[s] period (two years for torts or six years for a claim sounding in fraud) would apply"). And if a two-year limitations period applies, then Plaintiff's Spoliation claim would unquestionably be time-barred. Indeed, in addressing *Plaintiff's* Motion, the court might assume that a two-year period applies -- in which case, the limitations defense would certainly be proper. In any event, however, it is premature for the court to determine as a matter of law that a six-year limitations period applies -- the parties have not briefed or analyzed which period would be proper under Hawaii law, especially where it is not even clear whether Hawaii recognizes a Spoliation claim in the first place.

The court thus denies Plaintiff's Motion as to Defendant's statute of limitations defense. Granting such a motion is inappropriate at this stage, both factually and legally.

Plaintiff's Motion also refers -- without much argument -- to Defendant's fourth affirmative defense (res judicata/collateral estoppel). Pl.'s Mot. at 2. But this court's September 1, 2016 Order has already analyzed this defense,

having determined that three claims in the FAC are barred by res judicata, and that a Spoliation claim is *not* barred by the defense. *See Jou II*, 2016 WL 4582042, at *18. To be clear, the SAC sufficiently alleges that Plaintiff's Spoliation claim "arises out of the SCV Limited Partnership," and is not "with regard to the Notes." Accordingly, the Motion as to the res judicata defense is DENIED as MOOT.

Likewise, Plaintiff's Motion mentions Defendant's eighth affirmative defense, which asserts that "Plaintiff's claims are barred, in whole or in part, because Plaintiff lacks standing." Answer ¶ 42. Neither party, however, addresses this defense of "standing" (which, in any event, appears to be mere "boilerplate"). Plaintiff would certainly appear to have standing to assert a Spoliation claim as a member of the SCV Limited Partnership, *see, e.g.*, SAC ¶ 3; it is unclear, however, whether others, or the partnership itself, might be more proper parties to assert such a claim. But because this defense was not clearly briefed, the court DENIES the Motion as to the eighth affirmative defense without prejudice.

///

///

///

///

///

## V. **CONCLUSION**

Because genuine issues of material fact exist on the current record, Plaintiff's Renewed Motion for Partial Summary Judgment/Summary Adjudication, ECF No. 127, is DENIED.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, July 13, 2017.



/s/ J. Michael Seabright
J. Michael Seabright
Chief United States District Judge

*Jou v. Adalian*, Civ. No. 15-00155 JMS-KJM, Order Denying Plaintiff's "Renewed Motion For Summary Judgment/Partial Summary Adjudication, and/or an FRCP 56(g) Order," ECF No. 127