IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| EMERSON M.F. JOU, M.D., | Civ. No. 15-00155 JMS-KJM |
| Plaintiff, | ORDER GRANTING DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS, ECF NO. 194, AND DISMISSING ACTION |
| vs. | |
| GREGORY M. ADALIAN, | |
| Defendant. | |

## ORDER GRANTING DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS, ECF NO. 194, AND DISMISSING ACTION

## I. INTRODUCTION

This is the latest chapter in a contentious and procedurally complex legal saga spanning nearly ten years, encompassing two federal diversity suits and intervening bankruptcy proceedings, between Plaintiff Emerson Jou ("Plaintiff" or "Jou") and Defendant Gregory Adalian ("Defendant" or "Adalian") regarding promissory notes and an "SCV Limited Partnership" of which Adalian was the general partner and Jou was a limited partner.

The present Motion involves conflict-of-law principles. Adalian moves for judgment on the pleadings, arguing that (1) California law applies to Jou's last remaining claim, which alleges intentional spoliation of evidence

1

regarding the SCV Limited Partnership, and (2) if California law applies, then the claim fails because California does not recognize such a tort as pled in the Second Amended Complaint ("SAC"). ECF No. 194. Based on the following, the court agrees with Adalian and GRANTS the Motion.

## II. <u>BACKGROUND</u>

As before, it is not necessary to reiterate the protracted history of this dispute. It is detailed in three of the court's many previous orders in this and the related prior suit, *Jou v. Adalian*, Civ. No. 09-00226 JMS-BMK (D. Haw.) ("*Jou I*"). The court references those Orders for the full background — in particular, the court relies on:

- A February 5, 2015 Order in *Jou I* that denied Plaintiff's motion seeking an order to arrest Defendant for repeated failures to pay an outstanding judgment after entering into a July 6, 2010 settlement agreement that purported to settle *Jou I* (the "July 2010 Settlement Agreement"), *see Jou I*, 2015 WL 477268 (D. Haw. Feb. 5, 2015) ("the February 5, 2015 Order");

- A September 1, 2016 Order in the present suit (*Jou v. Adalian*, Civ. No. 15-00155 JMS-KJM ("*Jou II*")) that granted Defendant's motion for judgment on the pleadings, with leave to amend granted as to one count, *see Jou II*, 2016 WL 4582042 (D. Haw. Sept. 1, 2016) ("the September 1, 2016 Order"), ECF No. 67; and

- A July 13, 2017 Order in *Jou II* that denied Plaintiff's attempt to obtain affirmative relief on the SAC at a summary judgment stage, *see Jou II*, 2017 WL 2990280 (D. Haw. July 13, 2017) ("the July 13, 2017 Order"), ECF No. 171.

Given those Orders, the court explains some of the relevant history to put the current Motion into proper context.

Two types of claims were at issue in *Jou I* and *Jou II*: (1) those "with regard to the Notes" between Jou and Adalian, and (2) those "arising out of the SCV Limited Partnership or its affairs." *Jou II*, 2017 WL 2990280 at *1 (citing *Jou II*, 2016 WL 4582042, at *2 n.3). The September 1, 2016, Order dismissed with prejudice, on res judicata grounds, the three Counts of Jou's First Amended Complaint ("FAC") in *Jou II* that were "with regard to the Notes." Those three Counts — sounding in allegations of settlement fraud arising out of the July 2010 Settlement Agreement between Jou and Adalian that was analyzed in the February 5, 2015 Order — were or could have been litigated in *Jou I*.[1] *See Jou II*, 2016 WL

---

[1] Paragraph Five of the July 2010 Settlement Agreement provides:

> The parties agree that this Agreement is limited to the claims in the Subject Lawsuit [*Jou I*] regarding the Notes, and Dr. Jou and Mr. Adalian do not release claims, causes of action or defenses arising out of $282,000.00 invested by Dr. Jou in the Partnership. Dr. Jou and Mr. Adalian agree that . . . the Parties reserve, and do not release or waive any claims, causes of action, or defenses arising out of the Partnership or its affairs.

(continued . . .)

4582042 at *17.  But the September 1, 2016 Order granted Jou leave to amend the

FAC's Count Three, which was his vaguely pled and potentially time-barred claim

for intentional spoliation of evidence.  *Id.* at *20.  The court concluded that such a

claim (assuming Hawaii law applied, and Hawaii would recognize such a tort)

plausibly could have "arisen out of the SCV Limited Partnership or its affairs" and

thus would *not* be barred by res judicata.  *Id.*  Specifically, the court "grant[ed] Jou

leave to amend to file a [SAC] to attempt to allege a claim for 'intentional

spoliation of evidence' that is not time-barred (and that otherwise clearly fits

within the Settlement Agreement's [carved out] exception for claims 'with regard

to' the SCV Limited Partnership)."  *Id.*[2]

---

(. . . continued)

> In further consideration for the foregoing, and for the
> payments as scheduled in Paragraph No. 3, above, Dr. Jou agrees
> to cap any damages from claims or causes of action he may raise in
> the future as a result of his investment in the Partnership or the
> reserved claims or causes of action as follows: the amount Dr. Jou
> invested $282,000.00, plus a 20% rate of return; and $25,000 for
> general damages.

*Jou II*, 2016 WL 4582042, at *2 n.3.

[2]  The court recognized that, under Hawaii law, a six-year limitation period for a fraud-based claim might apply, although the court also pointed out that generally only a two-year period applies for tort claims.  *Jou II*, 2016 WL 4582042, at *19.  The court, however, did not need to decide which limitation period would apply if Hawaii recognized a cause of action for intentional spoliation.  *See id.* ("If Hawaii recognizes a cause of action for intentional spoliation of evidence, it is unclear which limitation period (two years for torts or six years for a claim sounding in fraud) would apply — 'intentional spoliation' appears to be both a tort, and a cause of action sounding in fraud.  But even applying the longer six-year limitation period, Count

(continued . . .)

In accordance with the leave he was granted, Jou filed his SAC on September 22, 2016, alleging a single count for intentional spoliation of evidence. ECF No. 68. The SAC contends, among other assertions, that Jou did not know that Adalian had spoliated SCV records until August 9, 2011 and September 7, 2011 (within a six-year limitations period for fraud under Hawaii law, and when Adalian knew of a potential lawsuit against him regarding the SCV Limited Partnership).[3] SAC ¶ 9.C. Specifically, the SAC alleges that Adalian "intentionally destroyed, concealed, or otherwise spoliated evidence designed to disrupt or defeat Plaintiff's potential lawsuit," *id.* ¶ 10, and that Jou only discovered such spoliation in August and September of 2011, during Adalian's bankruptcy proceedings in the Bankruptcy Court for the Middle District of Pennsylvania. *Id.* ¶¶ 10.B, 10.C. The SAC also alleges in some detail that "[t]here was a causal relationship between the acts of spoliation and the inability to prove

---

(. . . continued)
Three is time-barred."). In short, as the court discussed in the July 13, 2017 Order, the proper statute of limitations — whether under Hawaii law or California law — remains an open question. *See Jou II*, 2017 WL 2990280, at *8 ("[I]t remains unclear whether the limitations period is actually six years (as opposed to two years for a tort claim). As discussed in the September 1, 2016 Order, the court only assumed that a six-year period applies for purposes of addressing Defendant's prior motion for judgment on the pleadings.") (emphasis omitted).

[3] This lawsuit (*Jou II*) was initially filed on April 29, 2015. ECF No. 1.

the . . . claims in a lawsuit[,]" *id.* ¶ 17, and that Jou suffered damages as a result of the alleged spoliation, *id.* ¶ 18.

As previous Orders identified, a critical and unresolved question in this case is whether intentional spoliation of evidence — again, the only claim remaining in this action — is even actionable in tort. The September 1, 2016 Order explained that the Hawaii Supreme Court explicitly declined to answer a certified question from a judge of this court asking whether Hawaii law recognizes a civil cause of action for spoliation of evidence. *See Jou II*, 2016 WL 4582042, at *18 (discussing *Matsuura v. E.I. du Pont de Nemours & Co.*, 102 Haw. 149, 73 P.3d 687 (2003), which set forth the elements of intentional spoliation of evidence as found in "[t]he few jurisdictions that recognize [such] a cause of action," but which did not resolve whether Hawaii recognized the tort because the plaintiff could not meet those elements even if applicable). The September 1, 2016 Order analyzed the FAC by likewise assuming the elements of the tort discussed in *Matsuura*. Similarly, the July 13, 2017 Order addressed (and denied) Plaintiff's attempt to obtain affirmative relief at a summary-judgment stage, applying the basic elements of a tort of intentional spoliation of evidence from other jurisdictions, and assuming that the tort exists in Hawaii law. *See Jou II*, 2017 WL 2990280, at *3.

Because of this uncertainty, the court and the parties in this litigation have always contemplated the possibility of the court again certifying to the Hawaii Supreme Court the question whether Hawaii recognizes the tort.[4]  For example, the September 1, 2016 Order mentioned the possibility.  *See* 2016 WL 4582042, at *19 ("This court — like *Matsuura* — also need not decide (at this stage) whether *Jou II* is an appropriate case to address whether Hawaii would recognize the tort (or to certify again the question to the Hawaii Supreme Court.)").  Indeed, on October 7, 2016, soon after filing the SAC, Plaintiff filed a "Motion for Certification of Questions to the Hawaii Supreme Court."  *See* ECF No. 71.  He sought to certify, among other questions, whether Hawaii recognizes a tort of intentional spoliation of evidence, and if so, what statute of limitations applies.  *Id.*  The court denied that certification motion without prejudice to the issue being raised later, reasoning in an Entering Order that,

> Under Hawaii Rule of Appellate Procedure 13, certification of a question of Hawaii law by a federal court is only appropriate — among other factors — when a question is "determinative of the cause."  Haw. R. App. P. 13(a).  It is premature in this action to decide whether

---

[4]  Hawaii Rule of Appellate Procedure ("HRAP") 13(a) provides:  "When a federal district or appellate court certifies to the Hawai'i Supreme Court that there is involved in any proceeding before it a question concerning the law of Hawai'i that is determinative of the cause and that there is no clear controlling precedent in the Hawai'i judicial decisions, the Hawai'i Supreme Court may answer the certified question by written opinion."

> any of the questions Plaintiff seeks to have certified are
> "determinative of the cause."
> . . . .
> . . . In short — even if the court might otherwise be
> inclined to certify an open question of Hawaii law —
> there are many procedural scenarios where the question
> would not be "determinative of the cause."

ECF No. 73.

And after the July 13, 2017 Order (when the procedural posture became more appropriate to consider certification) the court held a status conference on August 1, 2017, discussing the certification possibility with counsel. ECF No. 183. During that conference, Adalian's counsel raised for the first time the possibility — apparently discovered while assessing whether certifying questions would be "determinative of the cause" under HRAP 13(a) — that *California* (not Hawaii) law might apply to the spoliation allegations because the SCV Limited Partnership document had specifically chosen California law. *See* SAC at Ex. A.50, ECF No. 68-2 ("Governing Law. The provisions of this Agreement shall be construed and enforced in accordance with the law of the State of California."). The court thus granted Adalian leave to file an appropriate motion raising the choice-of-law issue. *See* ECF No. 183 (minutes providing that "Defendant may file a Motion re: choice of law."); ECF No. 248 (Transcript of status conference).

Given that the court explicitly gave Adalian leave to file such a motion, the court rejects Jou's arguments here that the present Motion for Judgment on the Pleadings is improper because it was filed after the then-dispositive motions cut-off date, or was an improper amendment to the then-applicable Rule 16 Scheduling Order.[5]  If California law applies, whether Hawaii law recognizes an independent tort of intentional spoliation of evidence would not be "determinative of the cause."  The Hawaii Supreme Court would be deciding a hypothetical question.  It was in that context that Adalian's counsel raised the choice-of-law question.

Accordingly, Adalian filed the present Motion for Judgment on the Pleadings on August 17, 2017.  ECF No. 194.  Jou filed an Opposition on September 1, 2017, ECF No. 199, and Adalian filed a Reply on September 11, 2017.  ECF No. 203.  The matter was originally set for hearing on December 18, 2017, ECF No. 207, but the hearing was vacated at Jou's counsel's request, ECF No. 212, and the Motion was heard on February 12, 2018.  ECF No. 235.

---

[5]  And in fact, all counsel agreed on the record at the August 1, 2017 status conference that the court should resolve whether California law applies before proceeding further in this action.  *See* Tr. Aug. 1, 2017 Status Conf. at 3 (court summarizing, without objection, that "we all agreed that it would be appropriate to have that motion filed regarding choice of law. . . . we're all in agreement that that should be resolved first"), ECF No. 248.

### III.  <u>STANDARD OF REVIEW</u>

Although the issue may be raised at other stages, a party may properly raise a choice-of-law question by a motion for judgment on the pleadings.  *See, e.g.*, *Sutter Home Winery, Inc. v. Vintage Selections, Ltd.*, 971 F.2d 401, 405-08 (9th Cir. 1992) (addressing choice-of-law questions brought by a motion for judgment on the pleadings); *cf. Hamby v. Ohio Nat'l Life Assur. Corp.*, 2012 WL 2568149, at *2 (D. Haw. June 29, 2012) ("[C]ourts need not wait for discovery before conducting choice of law analyses where the pleadings, construed in the plaintiff's favor, contain all necessary facts.") (citations omitted) (deciding choice-of-law issue on motion to dismiss).

A party may make a motion for judgment on the pleadings at any time after the pleadings are closed, but within such time as to not delay the trial.  Fed. R. Civ. P. 12(c).  Because the issue presented by a Rule 12(c) motion is substantially the same as that posed in a 12(b)(6) motion — whether the factual allegations of the complaint, together with all reasonable inferences, state a plausible claim for relief — the same standard applies to both.  *See Cafasso v. Gen. Dynamics C4 Sys.*, 637 F.3d 1047, 1054 & 1054 n.4 (9th Cir. 2011); *see also Dworkin v. Hustler Magazine Inc.*, 867 F.2d 1188, 1192 (9th Cir. 1989) (holding that Rule 12(c) and

Rule 12(b)(6) motions differ in time of filing but are otherwise "functionally identical," and applying the same standard of review).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). When considering a Rule 12(c) motion, the court "must accept all factual allegations in the complaint as true and construe them in the light most favorable to the non-moving party." *Fleming v. Pickard*, 581 F.3d 922, 925 (9th Cir. 2009).

A motion for judgment on the pleadings is properly granted when there are no disputed issues of material fact, and the moving party is entitled to judgment as a matter of law. *See Ventress v. Japan Airlines*, 603 F.3d 676, 681 (9th Cir. 2010) (citations omitted). Judgment on the pleadings is not appropriate if the court considers matters outside of the pleadings; in such cases, the motion must be converted to a Rule 56 motion for summary judgment, and the non-moving party must be granted an opportunity to respond. *See Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1550 (9th Cir. 1989). The court may, however, "consider certain materials — documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice

— without converting the motion . . . into a motion for summary judgment."

*United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).

## IV.  DISCUSSION

Adalian contends that California law applies to Jou's spoliation claim, which necessarily "arises out of the SCV Limited Partnership or its affairs."[6]  And if California law applies, Adalian argues that the claim fails as a matter of law under *Cedars-Sinai Medical Center v. Superior Court*, 954 P.2d 511 (Cal. 1998), which held that "there is no tort remedy for the intentional spoliation of evidence by a party to the cause of action to which the spoliated evidence is relevant, in cases in which . . . the spoliation victim knows or should have known of the alleged spoliation before the trial or other decision on the merits of the underlying action." *Id.* at 521.[7]

---

[6] If the alleged spoliation does not arise out the partnership or its affairs, and was instead "with regard to the Notes" between Jou and Adalian, then the claim fails on res judicata grounds, *Jou II*, 2016 WL 4582042, at *2.

[7] "The fact that two or more states are involved does not itself indicate that there is a conflict of law problem.  A problem only arises if differences in state law are material, that is, if they make a difference in this litigation." *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 590 (9th Cir. 2012) (citation omitted).  In other words, "[a]ny differences in [the states'] laws must have a significant effect on the outcome of the trial in order to present an actual conflict in terms of choice of law." *In re Complaint of Bankers Tr. Co.*, 752 F.2d 874, 882 (3d Cir. 1984) (cited with approval in *Mazza*).  Here, the differences (or potential differences) between Hawaii and California law are material.  They certainly could "have a significant effect on the outcome" of the litigation.  *Id.*  If Hawaii law applies, the court would strongly consider certifying a question or questions to the Hawaii Supreme Court — and if Hawaii recognizes a spoliation cause of

(continued . . .)

The court first analyzes the choice-of-law question, and then (having concluded that California law applies) addresses whether *Cedars-Sinai* bars Jou's claim.

## A.    Choice of Law

### 1.    *Relevant Principles*

"In a diversity case, 'federal courts apply the substantive law of the forum in which the court is located, including the forum's choice of law rules.'" *Downing v. Abercrombie & Fitch*, 265 F.3d 994, 1005 (9th Cir. 2001) (quoting *Ins. Co. of N. Am. v. Fed. Express Corp.*, 189 F.3d 914, 921 (9th Cir. 1999)); *Klaxon Co. v. Stentor Elec. Mfg. Co.,* 313 U.S. 487, 496 (1941).  In turn, "[u]nder Hawaii law, courts 'look to the state with the most significant relationship to the parties and subject matter' in a choice-of-law analysis." *Standard Register Co. v. Keala*, 2015 WL 3604265, at *6 (D. Haw. June 8, 2015) (quoting *Mikelson v. United Servs. Auto. Ass'n*, 107 Haw. 192, 198, 111 P.3d 601, 607 (2005)) (square brackets omitted).  *Mickelson*'s "flexible approach places 'primary emphasis on deciding which state would have the strongest interest in seeing its laws applied to the particular case.'" *Mikelson*, 107 Haw. at 198, 111 P.3d at 607 (quoting *Lewis v.*

_____

(. . . continued)
action, then the action would continue — but if California law bars Jou's claim, then the action ends.

*Lewis*, 69 Haw. 497, 499, 748 P.2d 1362, 1365 (1988)). "[T]he interests of the states and applicable public policy reasons should determine whether Hawaii law or another state's law should apply." *Id.* (citing *Peters v. Peters*, 63 Haw 653, 667-68, 634 P.2d 586, 595 (1981)). "And Hawaii courts are 'guided by' the Restatement (Second) of Conflict of Laws § 187 (1971), in determining which law to apply where a contract contains an explicit choice-of-law clause." *Standard Register*, 2015 WL 3604265, at *6 (citing *Ingalls v. Gov't Emps. Ins. Co.,* 903 F. Supp. 2d 1049, 1055 (D. Haw. 2012)).[8]

---

[8] The Restatement (Second) Conflict of Laws § 187(2) provides:

> The law of the state chosen by the parties to govern their contractual rights and duties will be applied, even if the particular issue is one which the parties could not have resolved by an explicit provision in their agreement directed to that issue, unless either
>     (a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or
>     (b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which, under the rule of [Restatement (Second) Conflict of Laws] § 188, would be the state of the applicable law in the absence of an effective choice of law by the parties.

Although § 187(2)(b) in turn refers to § 188 (listing factors to consider where a contract includes no governing law provision), "the Hawaii Supreme Court has expressly rejected § 188 in determining what law applies in the absence of a governing law provision." *Ingalls*, 903 F. Supp. 2d at 1056; *see Del Monte Fresh Produce (Hawaii), Inc. v. Fireman's Fund Ins. Co.*, 117 Haw. 357, 364, 183 P.3d 734, 741 (2007) (rejecting reliance on § 188). "Rather, the Hawaii Supreme Court has adopted a more flexible approach of determining which state has the most significant relationship to the dispute." *Ingalls*, 903 F. Supp. 2d at 1056 (referring to *Mikelson*).

Here, as cited earlier, the SCV Limited Partnership document includes a section providing: "Governing Law. The provisions of this Agreement shall be construed and enforced in accordance with the law of the State of California." SAC at Ex. A.50, ECF No. 68-2. Contrary to Adalian's argument that this choice-of-law clause is dispositive, the clause's significance is tempered because the cause of action at issue here — intentional spoliation of evidence — is a tort, and "[c]laims arising in tort are not ordinarily controlled by a contractual choice of law provision." *Sutter Home Winery, Inc*, 971 F.2d at 407 (citation omitted). "Rather, they are decided according to the law of the forum state." *Id.*

But this does not necessarily mean that Hawaii tort law applies. Rather, it means the court applies Hawaii's general choice-of-law test to determine which tort law applies — without the strong presumption that arises from a contractual choice for contract-based claims.[9] *See, e.g.*, *Hawaii Island Air, Inc. v. Merlot Aero Ltd.*, 2015 WL 675512, at *19 (D. Haw. Jan. 30, 2015) ("This district has recognized that a choice-of-law provision governs the interpretation of a

---

[9] In particular, for tort claims, Hawaii's choice-of-law analysis has evolved into the current *Mikelson* test. *Compare Sosa v. Alvarez-Machain*, 542 U.S. 692, 704-05 (2004) (discussing an older "dominant principle in choice-of-law analysis for tort cases" of "*lex loci delicti*: courts generally applied the law of the place where the injury occurred.") (citations omitted), *with Peters*, 63 Haw. at 664, 634 P.2d at 593 ("[W]e see no basis for the acceptance of *lex loci delicti* as a controlling rule at this point in the growth of American Conflicts law. . . . The preferred analysis, in our opinion, would be an assessment of the interests and policy factors involved with a purpose of arriving at a desirable result in each situation.").

contract and rights arising therefrom, but not necessarily the related, non-contractual claims.") (citing *Prop. Rights Law Group, P.C. v. Lynch*, 2014 WL 2452803, at *13 (D. Haw. May 30, 2014)).  That is, for non-contractual claims, "Hawaii's choice of law rules require a 'flexible approach [that] places primary emphasis on deciding which state would have the strongest interest in seeing its laws applied to the particular case.'" *Lynch*, 2014 WL 2452803, at *13 (quoting *Del Monte Fresh Produce*, 117 Haw. at 364, 183 P.3d at 741).

Ultimately, then, the test in this case returns to *Mikelson* — which state has "the most significant relationship to the parties and subject matter." *Mikelson*, 107 Haw. at 198, 111 P.3d at 607.  *See, e.g., Hamby*, 2012 WL 2568149, at *3 (applying *Mikelson* to suit alleging breach of contract, bad faith, and statutory violations).  "In making this determination, courts 'look to factors such as (1) where relevant events occurred, (2) the residence of the parties, and (3) whether any of the parties had any particular ties to one jurisdiction or the other.'" *Hamby*, 2012 WL 2568149, at *3 (quoting *Kukui Gardens Corp. v. Holco Cap. Grp.,* 2010 WL 145284, at *5 (D. Haw. Jan.12,  2010)); *see also Matsuda v. Wada*, 101 F. Supp. 2d 1315, 1320 (D. Haw. 1999) (considering same factors in determining the state with the most significant relationship); *St. James v. JP Morgan Chase Bank*

*Corp.*, 2017 WL 4392040, at \*5 (D. Haw. Sept. 29, 2017) (applying *Mikelson* to tort, contract, and statutory claims).

### 2.    *Application of Principles*

Applying *Mikelson*, the court concludes that California law applies to Jou's alleged spoliation claim.  Here, the alleged spoliation necessarily occurred in relation to the SCV Limited Partnership, which was (or is) a California limited partnership created under the California Revised Limited Partnership Act.  SAC at Ex. A.16, ECF No. 68-2.  Its principal place of business was in California, with an address in Canyon Country, California.  *Id.* at A.56.  Its general partnership was a California General Partnership, which was made up of "Iron Properties, a California Limited Partnership, and SCV Development, a California Limited Partnership, as general partners."  *Id.* at A.58.  Several of its limited partners were listed with California addresses.  *Id.* at A.56-58.  The purpose of the SCV Limited Partnership was to "acquire, develop, sell and/or hold as investment" property located in Los Angeles County.  *Id.* at A.17; A.61.  Under the SCV partnership agreement, the books and records of the limited partnership — which allegedly were spoliated — were supposed to "at all times be maintained at an office located in the State of California."  *Id.* at A.46.  And it remains *relevant* (although not as dispositive as Adalian contends) that the SCV partnership agreement specifically

chose California law to govern its construction and enforcement, *id.* at A.50,

particularly where the spoliation claim arises from duties defined in the SCV

partnership agreement. Further, the uncontested evidence to date indicates that

(1) the partnership's bank accounts were located in California, Def.'s Ex. 5, ECF

No. 194-7; and (2) Adalian stored at least some partnership documents, which

were apparently only recently discovered, in a storage locker in California, ECF

No. 128-1 at 7; 134-1 at 18.[10] There is no indication that any alleged spoliation

occurred in Hawaii.

These factors all indicate that California has the strongest interest in a

suit alleging spoliation of records regarding a California limited partnership

governed by California law. This conclusion is especially true where, as here, the

alleged spoliation of records was necessarily restricted to the partnership

documents or its affairs. The SAC alleges that the spoliation disrupted or

---

[10] Although the SAC alleges that Jou is a citizen of Hawaii, and that Adalian is a citizen of Pennsylvania, SAC ¶ 1, Adalian argues that both parties have ties to California — Adalian is listed in the partnership agreement as having a California address, and Jou apparently has an office in California. ECF No. 203 at 7.

Further, although the SAC alleges that spoliation occurred in *Pennsylvania*, SAC at 9 ¶ 11, this allegation does not support application of *Hawaii* law. And, to the extent the location of that alleged spoliation is considered, Pennsylvania law (like California) also appears to reject an independent tort of spoliation of evidence. *See Pyeritz v. Commonwealth*, 32 A.3d 687, 695 (Pa. 2011) (declining to recognize a cause of action for negligent spoliation of evidence); *McIntosh v. Crist*, 2015 WL 418982, at *13 (W.D. Pa. Feb. 2, 2015) ("Courts in Pennsylvania have refused to recognize the tort of destruction of evidence as a cognizable claim.") (citing cases).

prevented Jou from bringing and proving a suit related to the SCV Limited Partnership — the suit that was specifically contemplated and reserved (i.e., not settled) in the July 2010 Settlement Agreement — a suit that was tethered exclusively to the SCV Limited Partnership obligations. Specifically, the SAC alleges that, because of the spoliation, Jou would not have been able to prove Adalian's misappropriation of the $282,000 Jou invested in the partnership (referred to in the July 2010 Settlement Agreement) and other violations of partnership duties — claims surely arising out of the California partnership's affairs. In short, the clause is relevant because Jou could not prove damages from the alleged spoliation of SCV documents without proving a violation of the underlying SCV partnership agreement (which is governed by California law).

The court thus rejects Jou's efforts to distance himself from the choice-of-law clause in the SCV Limited Partnership document. In so doing, he attempts to rely on a Hawaii choice-of-law clause in the July 2010 Settlement Agreement — but this clause does not help because applying it would mean the claim was "with regard to the Notes" between Jou and Adalian, and thus would be barred by res judicata under the September 1, 2016 Order.

Similarly, the court is not convinced by Jou's argument that Adalian should be judicially estopped from arguing that California law applies because

Adalian previously argued for (and the court applied) substantive Hawaii law in this case and in *Jou I*, and Hawaii res judicata principles in the September 1, 2016 Order.[11]  It is a well-settled principle of conflict-of-law analysis that different jurisdiction's laws can apply to different issues in the same case.  *See, e.g.*, *Allstate Ins. Co. v. Hague*, 449 U.S. 302, 307 (1981)  (recognizing a principle "long accepted by this Court, that a set of facts giving rise to a lawsuit, or a particular issue within a lawsuit, may justify, in constitutional terms, application of the law of more than one jurisdiction") (citations omitted); *Berg Chilling Sys., Inc. v. Hull Corp.*, 435 F.3d 455, 462 (3d Cir. 2006) ("Because choice of law analysis is issue-specific, different states' laws may apply to different issues in a single case, a principle known as 'depecage.'") (citation omitted); *DeRoburt v. Gannett Co.*, 83 F.R.D. 574, 581 n.29 (D. Haw. 1979) ("Traditional choice of law rules have also been used to apply different rules of law to different issues arising in the same

---

[11]    The September 1, 2016 Order looked first to federal law to determine the scope of the preclusive effect of *Jou I* on claims brought in *Jou II*.  *See* 2016 WL 4582042, at *12.  "The Supreme Court has held that 'federal common law governs the claim-preclusive effect of a dismissal by a federal court sitting in diversity.'"  *Taco Bell Corp. v. TBWA Chiat/Day Inc.*, 552 F.3d 1137, 1144 (9th Cir. 2009) (quoting *Semtek Int'l Inc. v. Lockheed Martin Corp.,* 531 U.S. 497, 508 (2001)).  But, in turn, "[f]ederal common law requires application of 'the law that would be applied by state courts in the State in which the federal diversity court sits.'"  *Id.* (quoting *Semtek*, 531 U.S. at 508).  And so, because this court sits in Hawaii, the September 1, 2016 order applied Hawaii preclusion principles to analyze the preclusive effect of its Judgment in *Jou I*, which also largely applied substantive Hawaii law in enforcing the July 2010 Settlement Agreement that chose "the laws of the State of Hawaii," *Jou I*, 2015 WL 7451160, at *1.  *See Jou II*, 2016 WL 4582042, at *12.

case.").  The court previously applied substantive Hawaii law to claims "with regard to the Notes" and to settlement fraud, given the Hawaii choice-of-law provision in the July 2010 Settlement Agreement; and it applied Hawaii law to analyze the preclusive effect of *Jou I* as directed by federal law.  It is not inconsistent to apply California law to a different question, one that "arises out of the SCV Limited Partnership or its affairs."[12]

In short, the court applies California substantive law to Jou's intentional spoliation of evidence claim.

## B.    California Law Bars Jou's Claim for Intentional Spoliation of Evidence

*Cedars-Sinai* rejected a claim for intentional spoliation of evidence (although condemning the practice) for a number of policy reasons including (1) preserving the finality of adjudication — allowing the tort "could spawn an endless cycle of litigation," *Roach v. Lee*, 369 F. Supp. 2d 1194, 1201 (C.D. Cal. 2005) (discussing *Cedars-Sinai*) — and (2) "the uncertainty of the fact of harm in spoliation cases."  *Cedars-Sinai*, 954 P.2d at 518.

> [P]ursuing a spoliation tort remedy in a proceeding
> separate from the underlying action would result in
> duplicative proceedings without avoiding the potential
> for inconsistent remedies.  The spoliation action would

---

[12]  Again, as explained earlier, the court allowed Defendant to raise this choice-of-law issue at this stage because it is necessary to determine whether the spoliation question is "determinative of the cause" under HRAP 13(a).

> require a 'retrial within a trial,' for all of the evidence in
> the underlying action would have to be presented again
> so that the spoliation jury could determine what effect the
> spoliated evidence would have had in light of all the
> other evidence.

*Id.* at 520 (citations omitted).[13]  Similarly, "if . . . a spoliation tort cause of action

were tried jointly with the claims in the underlying action, a significant potential

for jury confusion and inconsistency would arise."  *Id.*

 *Cedars-Sinai* recognized that "intentional destruction of evidence is a

grave affront to the cause of justice and deserves our unqualified condemnation,"

*id.* at 512, but reasoned that "it is preferable to rely on existing nontort remedies

rather that creating a tort remedy."  *Id.*  In particular, the California Supreme Court

pointed to evidentiary and related discovery sanctions such as monetary or

contempt sanctions, preclusion of evidence (or ordering that facts be taken as

established), terminating sanctions, or granting a default judgment against an

offending party in the underlying suit, which are all possible remedies.  *Id.* at 517-

18.  It also emphasized possible disciplinary sanctions against counsel, and the

existence of criminal penalties for spoliation.  *Id.* at 518.

---

[13]  This "trial within a trial" logic exemplifies why California law applies.  As explained
earlier, in order for Jou to prove damages for spoliation related to the SCV Limited Partnership,
he would have to invoke the SCV Limited Partnership's duties and thus interpret an agreement
that chose California law for its construction and enforcement.

The California Supreme Court extended *Cedars-Sinai* from the first party context (involving spoliation by a party to litigation) to a third-party context (involving spoliation by a non-party) in *Temple Community Hospital v. Superior Court*, 976 P.2d 223 (Cal. 1999), relying on similar logic.  As in *Cedars-Sinai*, *Temple* recognized that perjury by a witness is not actionable in tort, and reasoned that "[t]hird party spoliation of evidence is analogous to perjury by a witness, and the same endless spiral of lawsuits over litigation-related misconduct could ensue were we to recognize a tort cause of action for third party spoliation."  *Id.* at 229-30.  And it again invoked existing nontort remedies as alternatives to establishing an independent cause of action, including evidentiary and "monetary and contempt sanctions against persons who flout the discovery process by suppressing or destroying evidence."  *Id.* at 232.  "[T]he victim of third party spoliation may deflect the impact of the spoliation on his or her case by demonstrating why the spoliated evidence is missing," or possibly "establish[ing] a connection between the spoliator and a party to the litigation sufficient to invoke the sanctions applicable to spoliation by a party."  *Id.* (citations omitted).

Jou acknowledges that these cases rejected the establishment of a spoliation tort, but emphasizes that the California Supreme Court expressly limited its holding to situations "when the spoliation is or reasonably should have been

discovered before the conclusion of the underlying litigation." *Cedars-Sinai*, 954

P.2d at 512.  It specifically noted that it did "not decide . . . whether a tort cause of

action for spoliation should be recognized . . . in cases of first party spoliation in

which the spoliation victim neither knows nor should have known of the spoliation

until after a decision on the merits of the underlying action." *Id.* at 521 n.4.  Jou

thus argues that he fits within that possible exception because he allegedly did not

know about the spoliation until August or September of 2011 (which was after the

July 2010 Settlement Agreement in *Jou I*), claiming he would not have entered into

that agreement had he known that Adalian intended to spoliate records to interfere

with the potential suit regarding the SCV Limited Partnership that was reserved in

that agreement.

Jou relies on a thin reed — no court has actually recognized a

spoliation tort under the undecided exception mentioned in *Cedars-Sinai*.  But

other courts have rejected it.  *See Roach*, 369 F. Supp. 2d at 1200-1203

(recognizing the unanswered question, but predicting that the California Supreme

Court would likewise reject the tort even where the victim did not know, nor

should not have known, of the spoliation until after a decision on the merits).  *Cf.*

*Kearney v. Foley & Lardner, LLP*, 590 F.3d 638, 650 (9th Cir. 2009) ("To the

extent the tort continues to exist in California to address spoliation a party did not

or could not have known about prior to the end of litigation . . . other remedies may be available.").

But more important, Jou doesn't even fit within the possible exception for lack of knowledge "before the conclusion of the underlying litigation," *Cedars-Sinai*, 954 P.2d at 512. The "underlying litigation" for these purposes is *not* the July 2010 Settlement Agreement, or *Jou I* itself — instead it is the "potential lawsuit" related to the SCV Limited Partnership involving misappropriation of $282,000 and other breaches that Jou alleges he was unable to prove due to spoliation. SAC ¶¶ 10, 17-18. And in any event, if the July 2010 Settlement Agreement is the operative "underlying litigation," then the claim is barred by res judicata because Jou pursued his remedies for settlement fraud in *Jou I*. *See Jou II*, 2016 WL 4582042, at *18.

Further, it is undisputed that Jou never actually brought that underlying "potential lawsuit" against Adalian for misappropriation of funds or other breaches related to the SCV Limited Partnership. At most, he brought the current litigation in 2015 (which is now limited to the spoliation claim). Either way, he necessarily knew of the alleged spoliation (in 2011) well before the "conclusion" of any underlying litigation. *See Megargee ex rel. Lopez v. Wittman*, 2006 WL 2988945, at *15 (E.D. Cal. Oct. 17, 2006) (rejecting a spoliation claim

under the possible *Cedars-Sinai* exception, explaining that "[i]n this case, there is no underlying action that concluded before Plaintiffs knew about the spoliation . . . this action is the only action impacted by the spoliation, and this action has not yet concluded."). And where no SCV suit was brought, there could have been no conclusion. *Megargee* further reasoned that "[t]he Ninth Circuit has confirmed that a decision on the merits of an underlying litigation must have occurred for a party to have a spoliation cause of action. *Evidence destroyed prior to any litigation does not fall within this exception.*" *Id.* (emphasis added) (citing *Saridakis v. United Airlines*, 166 F.3d 1272 (9th Cir. 1999)).

Jou never did file the SCV suit against Adalian that he claims he could not prove. It is entirely speculative whether he would have failed to prove that suit; perhaps if he had filed it, he could have proven it. Indeed, this posture exemplifies the logic of *Cedars-Sinai*, and the factors of duplicative litigation, speculation, and difficulty of proving damages caused by spoliation that led the California Supreme Court to reject the tort.

It is no answer that a court could not have imposed discovery sanctions where no suit was pending, such as before the potential SCV suit would have been filed. If such a suit had been filed — even where Jou had knowledge that Adalian had already spoliated documents that would have made proving such

a suit difficult — it is well-established that a court could have then imposed appropriate spoliation sanctions for *pre-litigation* spoliation.

As this court analyzed in *Durham v. County of Maui*, 2010 WL 3528991 (D. Haw. Sept. 10, 2010): "[i]n general, a party has a duty to preserve evidence when it knows or reasonably should know the evidence is potentially relevant to litigation and when the destruction of that evidence prejudices the opposing party." *Id.* at *4 (citations omitted). And "[t]he duty to preserve material evidence arises not only during litigation but also extends to that period before the litigation when a party reasonably should know that the evidence may be relevant to *anticipated* litigation." *Id.* (emphasis added, citation and quotation marks omitted) (citing numerous cases). In such a situation, under its inherent power, a court "has available to it a number of sanctions and may (1) exclude evidence, (2) admit evidence of the circumstances of the spoliation, (3) instruct the jury that is may infer that the spoiled evidence would have been unfavorable to the responsible party, or even (4) dismiss claims." *Id.* at *5 (citation omitted). *See also, e.g.*, *Clark v. United States*, 2011 WL 66181, at *1 (D. Haw. Jan. 7, 2011) (discussing power to issue sanctions for pre-litigation spoliation); *Maui Elec. Co. v. Chromalloy Gas Turbine, LLC*, 2015 WL 12747945, at *3 (D. Haw. May 29,

2015) (same); *Dillon v. Nissan Motor Co.*, 986 F.2d 263, 267 (8th Cir. 1993) (same).

These types of available remedies for pre-litigation spoliation demonstrate that *Cedars-Sinai* applies equally to the current situation — where Jou had knowledge of the spoliation but did not pursue the underlying suit that he now claims was affected by the spoliation. *See, e.g.*, *Federated Mut. Ins. Co. v. Litchfield Precision Components, Inc.*, 456 N.W.2d 434, 437-38 (Minn. 1990) (refusing to adopt a spoliation tort as speculative, where a spoliation action was brought in lieu of the actual underlying action, reasoning that "[w]hile [plaintiff] asserts its subrogation claim was completely nullified when the fire evidence was discarded, [plaintiff] may well have recovered on this claim using this burden of proof shift, the remaining evidence and the adverse inference arising from the destruction"). That is, Jou necessarily had knowledge of the alleged spoliation *before* a final decision on the "underlying action," not *after* as is required to fit within the possible exception in *Cedars-Sinai*.

///

///

///

///

In short, the potential *Cedars-Sinai* exception, even if recognized, does not apply.  It follows that California law bars Jou's remaining claim for intentional spoliation of evidence, a claim that does not exist in California law.[14]

## V. <u>CONCLUSION</u>

For the foregoing reasons, the court GRANTS Adalian's Motion for Judgment on the Pleadings, ECF No. 194.  The Second Amended Complaint fails to state a claim, and is DISMISSED.  Because further amendment would be futile, the dismissal is with prejudice.  The Clerk of Court shall enter Judgment in favor of Adalian.  Any pending Motions are moot.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, April 25, 2018.



/s/ J. Michael Seabright
J. Michael Seabright
Chief United States District Judge

*Jou v. Adalian*, Civ. No. 15-00155 JMS-KJM, Order Granting Defendant's Motion For Judgment On The Pleadings, ECF No. 194, and Dismissing Action

---

[14]   Even if a claim under the exception were recognized, it might well be barred by a corresponding two-year limitation period that applied to spoliation claims before *Cedars-Sinai*.  *See August v. United Serv. Auto. Ass'n*, 16 Cal. Rptr. 2d 400, 403 (Cal. App. 1993) (concluding that a two-year limitations period applies to a cause of action for spoliation of evidence).  But because the claim otherwise fails, the court need not reach whether the claim is time-barred, or whether tolling might apply due to Adalian's intervening bankruptcy petitions.